1  Michael G. Woods, # 058683-0
   McCormick, Barstow, Sheppard,
2  Wayte & Carruth LLP
   P.O. Box 28912
3  5 River Park Place East
   Fresno, CA 93720-1501
4  Telephone:    (559) 433-1300
   Facsimile:    (559) 433-2300
5
   Attorneys for Defendant
6  FRESNO COMMUNITY HOSPITAL AND MEDICAL
   CENTER, a California nonprofit corporation, dba
7  COMMUNITY MEDICAL CENTERS (erroneously
   sued as COMMUNITY MEDICAL CENTERS, INC., a
8  California corporation)

(SPACE BELOW FOR FILING STAMP ONLY)

9              IN THE UNITED STATES DISTRICT COURT

10        EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

11

12  ERIN BROCKOVICH, on behalf of the          Case No.  06-CV-1609-AWI-DLB
    United States of America,
13                                             **DEFENDANT'S MEMORANDUM OF**
                    Plaintiff,                 **POINTS & AUTHORITIES IN SUPPORT**
14                                             **OF MOTION TO DISMISS PURSUANT TO**
                    v.                         **FEDERAL RULES OF CIVIL**
15                                             **PROCEDURE 12(B)(1) AND 12(B)(6)**
    COMMUNITY MEDICAL CENTERS,
16  INC., a California corporation; and DOES    Date:      January 22, 2007
    1 through 250, inclusive,                   Time:      1:30 p.m.
17                                              Courtroom: 2
                    Defendants.                 Judge:     Anthony W. Ishii
18
                                                Action Filed:    June 14, 2006
19                                              Trial Date:      None

20        Defendant FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER, a

21  California nonprofit corporation, dba COMMUNITY MEDICAL CENTERS (erroneously sued

22  as COMMUNITY MEDICAL CENTERS, INC., a California corporation) ("Defendant") hereby

23  submits the following Memorandum of Points and Authorities in Support of Motion to Dismiss

24  pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1) and 12(b)(6).

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    PROCEDURAL HISTORY ........................................................................... 1

III.   SALIENT FACTUAL BACKGROUND ....................................................... 2

    A.    Federal Medicare Program and the MSP Statute ................................. 2

    B.    Plaintiff's Allegations ......................................................................... 4

IV.    LAW AND ARGUMENT ............................................................................. 4

    A.    Standards on Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) ........... 4

    B.    Plaintiff Lacks Standing to Assert Claims under the MSP Statute ......................... 5

        1.    Plaintiff Fails to Allege any Facts Establishing that She has Article III Standing ................. 5

        2.    Plaintiff does not have Standing under a "Private Attorney General" Theory .................. 7

        3.    The MSP is not a Qui Tam Statute that affords Standing to Plaintiff ........ 7

    C.    Liability Under The MSP Cannot Be Premised Upon Unadjudicated Or Potential Tort Claims ........... 12

        1.    The MSP Statute Requires a "Demonstrated" Obligation to Pay ............. 12

        2.    The Administrative Record and Legislative History do not Support MSP Liability for Unadjudicated or Potential Tort Claims ..................... 15

        3.    Principles Of Federalism Counsel Against Interpreting The MSP To Create A Private Cause Of Action Based Upon Inchoate, Potential Tort Claims ........... 16

    D.    This Lawsuit Does Not Present A Justiciable Controversy ................... 18

V.     CONCLUSION ........................................................................................... 20

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

i

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)................................................................................................ 19

*Allen v. Wright,*
    468 U.S. 737 (1984)................................................................................................ 7

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................................ 18

*Atascadero State Hosp. v. Scanlon,*
    473 U.S. 234 (1985)................................................................................................ 17

*Baker v. Carr,*
    369 U.S. 186 (1962)................................................................................................ 6

*Bass Anglers Sportsman Soc. V. U.S. Steel Corp.,*
    324 F. Supp. 412 (N.D. Ala. 1971)....................................................................... 11, 12

*Bass Anglers Sportsman's Soc. v. U.S. Plywood-Champion Papers, Inc.,*
    324 F. Supp. 302 (S.D. Tex. 1971)........................................................................ 12

*Blue Cross & Blue Shield of Texas v. Shalala,*
    995 F.2d 70 (5th Cir. 1993).................................................................................... 2

*Brockovich v. HCA, Inc.,*
    No. 06-4501 (C.D. Cal. Oct. 24, 2006) ................................................................. 1

*Brockovich v. Scripps Health,*
    No. 06-1569 (S.D. Cal. Nov. 7, 2006) ................................................................... 1

*Brockovich v. Sharp Healthcare,*
    No. 06-1628 (S.D. Cal. Nov. 7, 2006) ................................................................... 1

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.,*
    116 F.3d 1364 (11th Cir. 1997)............................................................................. 6

*Califano v. Yamasaki,*
    442 U.S. 682 (1979)................................................................................................ 18

*Cochran v. United States Health Care Fin. Admin.,*
    291 F.3d 775 (11th Cir. 2002)............................................................................... 2

*Conley v. Gibson,*
    355 U.S. 41 (1957).................................................................................................. 5

*Conn. Action Now, Inc. v. Roberts Plating Co.,*
    457 F.2d 81 (2d Cir. 1972)..................................................................................... 11

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3   *De La Cruz v. Tormey,*
     582 F.2d 45 (9th Cir. 1978).............................................................................. 5

4

*Deiter v. Microsoft Corp.,*
5    436 F.3d 461 (4th Cir. 2006)............................................................................ 18

6

*Enquist v. Quaker Oats Co.,*
7    327 F. Supp. 347 (D. Neb. 1971) ..................................................................... 11

8   *Ewing v. Northridge Hosp. Med. Ctr.,*
     16 Cal. Rptr. 3d 591 (Cal. Ct. App. 2004) ...................................................... 20

9

*Frazer v. CAN Ins. Co.,*
10   374 F. Supp. 2d 1067 (N.D. Ala. 2005). .................................................... 3, 6, 7

11  *Friery v. Los Angeles Unified School Dist.,*
     448 F.3d 1146 (9th Cir. 2006)........................................................................... 4

12

*Glover v. Liggett Group, Inc.,*
13   459 F.3d 1304 (11th Cir. 2006)........................................................ 2, 14, 15, 18

14  *Glover v. Philip Morris USA,*
     380 F. Supp. 2d 1279 (M.D. Fla. 2005) ....................................... 2-4, 12-14, 16-18

15

*Gregory v. Ashcroft,*
16   501 U.S. 452 (1991)........................................................................................ 17

17  *In re Asbestos Litig.,*
     829 F.2d 1233 (3d Cir. 1987)........................................................................... 17

18

*Kowalski v. Tesmer,*
19   543 U.S. 125 (2004)........................................................................................ 18

20  *Lujan v. Defenders of Wildlife,*
     504 U.S. 555 (1992)........................................................................................ 5-7

21

*Mack v. S. Bay Beer Distribs.,*
22   798 F.2d 1279 (9th Cir. 1986)............................................................................ 5

23  *Manning v. Utils. Mut. Ins. Co.,*
     254 F.3d 387 (2d Cir. 2001)................................................................................ 3

24

*Marra v. Burgdorf Realtors, Inc.,*
25   726 F. Supp. 1000 (E.D. Pa. 1989) ................................................................ 8, 11

26  *Mason v. Am. Tobacco Co.,*
     346 F.3d 36 (2d Cir. 2003)....................................................................... 4, 13, 14

27

*MGIC Indem. Corp. v. Weisman,*
28   803 F.2d 500 (9th Cir. 1986)............................................................................. 5

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

iii

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

Page

*Mitchell v. Tenneco Chemicals, Inc.,*
   331 F. Supp. 1031 (D.S.C. 1971)..................................................................... 11

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815 (1999)....................................................................................... 18

*Powers v. Ohio,*
   499 U.S. 400 (1991)......................................................................................... 7

*Rae v. Union Bank,*
   725 F.2d 478 (9th Cir. 1984)........................................................................... 5

*Raygor v. Regents of the Univ. of Minnesota,*
   534 U.S. 533 (2002)....................................................................................... 17

*Riley v. St. Luke's Episcopal Hosp.,*
   252 F.3d 749 (5th Cir. 2001)............................................................................ 9

*Robertson v. Dean Witter Reynolds, Inc.,*
   749 F.2d 530 (9th Cir. 1984)........................................................................... 5

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004)......................................................................... 5

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976)........................................................................................... 5

*Socialist Labor Party v. Gilligan,*
   406 U.S. 583 (1972)....................................................................................... 19

*Sutton v. Providence St. Joseph Med. Cm,*
   192 F.3d 826 (9th Cir. 1999)......................................................................... 14

*Touche Ross & Co. v. Redington,*
   442 U.S. 560 (1979)....................................................................................... 10

*Transamerica Mortg. Advisors, Inc. v. Lewis,*
   444 U.S. 11, 19-23 (1979).............................................................................. 10

*United Seniors Ass'n, Inc. v. Philip Morris U.S.A.,*
   No. 05-11623-RGS, 2006 U.S. Dist. LEXIS 60729, at *11-12 (D. Mass. Aug. 28, 2006). ...... 13

*United States at rel. Kelly v. Boeing Co.,*
   9 F.3d 743 (9th Cir. 1993)............................................................................... 9

*United States at rel. Mattson v. Nw. Paper Co.,*
   327 F. Supp. 87 (D. Minn. 1971) ............................................................... 8, 12

*United States ex rel. Madden v. Gen. Dynamics Corp.,*
   4 F.3d 827 (9th Cir. 1993)............................................................................... 9

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

Page

*United States ex rel. Marcus v. Hess,*
  317 U.S. 537 (1943),...................................................................................... 11

*United States ex rel. St. Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co.,*
  451 F.3d 44 (2d Cir. 2006)............................................................................... 8

*United States v. Baxter Int'l. Inc.,*
  345 F.3d 866 (11th Cir. 2003)........................................................................... 3

*United States v. Florida-Vanderbilt Dev. Corp.,*
  326 F. Supp. 289 (S.D. Fla. 1971) .................................................................... 12

*Vermont Agency of Natural Res. v. United States ex rel. Stevens,*
  529 U.S. 765 (2000)........................................................................................... 11

*Walls v. Wells Fargo Bank, N.A.,*
  276 F.3d 502 (9th Cir. 2002)............................................................................. 10

*Warth v. Seldin,*
  422 U.S. 490 (1975)........................................................................................ 5, 7

*Washington State Dep't. of Soc. & Health Servs. V. Guardianship Estate of Keffeler,*
  537 U.S. 371 (2003)........................................................................................... 14

*Western Oil and Gas Ass'n v. Sonoma County,*
  905 F.2d 1287 (9th Cir. 1990).......................................................................... 19

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000)............................................................................ 4

*Winter v. Cal. Med. Review,*
  900 F.2d 1322 (9th Cir. 1990).......................................................................... 20

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
  433 F.3d 1199 (9th Cir. 2006).......................................................................... 19

*Zinman v. Shalala,*
  67 F.3d 841 (9th Cir. 1995)................................................................................ 2

**Statutes**

28 U.S.C. § 1441(b) ............................................................................................ 2

31 U.S.C. § 3730(b)-(f). ................................................................................... 8-9

42 C.F.R. § 411.52. ........................................................................................... 15

42 U.S.C. § 1395c (2006).................................................................................... 2

42 U.S.C. § 1395y(b). .......................................................................................... 1

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

v

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

Page

42 U.S.C. § 1395y(b)(2)(B) ............................................................................... 3

42 U.S.C. § 1395y(b)(2)(B)(ii) ..................................................................... 12-15

42 U.S.C. § 1395y(b)(2)(B)(iii). ................................................................. 3, 11

42 U.S.C. § 1395y(b)(3)(A) ................................................................ 8, 10, 12, 13

Fed. R. Civ. P. 12(b)(l)............................................................... 1, 4, 5, 7, 21

Fed. R. Civ. P. 12(b)(6)................................................................... 1, 12, 21

**Other Authorities**

31 Am. Jur. Proof of Facts §§ 10, 11 ......................................................... 20

Daniel Yi, *Judge Rejects Brockovich's Role as Plaintiff*, L.A. TIMES, November 10, 2006, at C2  1

*Disarming the Private Attorney General*, 2003 ILL. L. REV. 183, 186 ........................... 7

Medicare as Secondary Payer and Medicare Recovery Against Third Parties, 54 Fed. Reg. 41, 727 (Oct. 11, 1989) ...................................................................... 15

Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. Law 108-173, § 301, 117 Stat. 2066, 2221-23 (2003). ................................................... 3

Medicare Secondary Payer Manual Ch. 7 § 50.4.1 ............................................. 15

Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986) ............................................................................................. 3, 10

*Waste, Fraud, and Abuse: Hearing Before the House Comm. On Ways and Means*, 108th Cong. 88 (2003) ................................................................................ 16

Wm. Moore, et. al., *Moore's Federal Practice* ¶ 12.30[4] at 12-38 (ed. 1999)................. 4

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

vi

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1

## I.
## INTRODUCTION

Plaintiff ERIN BROCKOVICH ("Plaintiff") is a California resident suing Defendant "on behalf of the United States" in an attempt to recoup conditional Medicare payments under the Medicare Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y(b). In California alone, Plaintiff has filed more than thirty identical lawsuits against various hospitals and nursing homes. *See* Daniel Yi, *Judge Rejects Brockovich's Role as Plaintiff*, L.A. TIMES, November 10, 2006, at C2, attached hereto as Exhibit "A." Last month, the Honorable David O. Carter, United States District Judge for the Central District of California, dismissed five of these lawsuits with prejudice due to Plaintiff's lack of standing. *See Brockovich v. HCA, Inc.*, No. 06-4501 (C.D. Cal. Oct. 24, 2006), attached hereto as Exhibit "B." Earlier this month, Judge Carter also issued tentative dismissals on twenty-four more. *See* Exhibit "A." Similarly, two weeks ago, the Honorable Thomas J. Whelan, United States District Judge for the Southern District of California, dismissed two of these lawsuits with prejudice in two separate opinions due to Plaintiff's lack of standing and her failure to state a claim upon which relief can be granted. *See Brockovich v. Sharp Healthcare*, No. 06-1628 (S.D. Cal. Nov. 7, 2006), attached hereto as Exhibit "C;" *Brockovich v. Scripps Health*, No. 06-1569 (S.D. Cal. Nov. 7, 2006), attached hereto as Exhibit "D."

As set forth more particularly below, like its predecessors, this case too should be dismissed for three reasons: (1) Plaintiff has no standing to bring this case; (2) her allegations of unadjudicated or potential tort liability are insufficient as a matter of law to establish that Defendant is liable under the MSP; and (3) her claims are too attenuated and uncertain to adjudicate in this lawsuit.

## II.
## PROCEDURAL HISTORY

On June 14, 2006, Plaintiff filed her single-count complaint, alleging that Defendant violated the MSP, 42 U.S.C. § 1395y(b). To date, Defendant has not been legally served with the

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    Summons and Complaint, as Plaintiff's earlier attempt to effect proper service failed because

2    Plaintiff served someone other than Defendant.  Later, on November 9, 2006, Defendant filed a

3    Notice of Removal of Action under 28 U.S.C. § 1441(b) with this Court.

### III.
### SALIENT FACTUAL BACKGROUND

A.    **Federal Medicare Program and the MSP Statute**

7    Medicare is a government program that provides health insurance benefits for persons

8    above 65 years of age, persons who are disabled, and persons with end-stage renal disease.  42

9    U.S.C. § 1395c (2006).  The MSP was enacted to reduce federal health care costs by designating

10    certain insurers as "primary payers" for medical services where both the private insurers and

11    Medicare are otherwise obligated to pay for the same services.  *See Zinman v. Shalala*, 67 F.3d

12    841, 845 (9th Cir. 1995); *Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279, 1282 (M.D. Fla.

13    2005) ("*Glover I*"), *aff'd, Glover v. Liggett Group, Inc.*, 459 F.3d 1304 (11th Cir. 2006) ("*Glover

14    II*").  The MSP statute is essentially a coordination-of-benefits provision, used to identify when

15    Medicare's obligation to pay is subordinated to that of another insurer.  *See, e.g., Medicare

16    Secondary Payer and You:  Overview.*[1]  The MSP "makes Medicare the secondary payer for

17    medical services provided to Medicare beneficiaries whenever payment is available from another

18    primary payer." *Glover I*, 380 F. Supp. 2d at 1282 (citing *Cochran v. United States Health Care

19    Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002)).  "[P]rivate plans are therefore considered

20    'primary' under the MSP and Medicare acts as the 'secondary' payer responsible only for paying

21    amounts not covered by the primary plan." *Blue Cross & Blue Shield of Texas v. Shalala*, 995

22    F.2d 70, 73 (5th Cir. 1993).

23    Where payment for medical services may be covered by a primary plan, Medicare may

24    make "conditional payments" for such services where the primary plan "has not made or cannot

25    reasonably be expected to make payment with respect to such [medical services] promptly."  42

26

---

[1] Available on CMS' website at http://www.cros.hhs.gov/MedicareSecondPayerandYou/01_
overview.asp (likening term "Medicare Secondary Payer" to private health insurance industry
term "Coordination of Benefits," and noting that "Medicare Secondary Payer is the term used by
Medicare when Medicare is not responsible for paying first").

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

2

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    U.S.C. § 1395y(b)(2)(B). Medicare is entitled to recoup conditional payments from a primary

2    plan or any entity receiving payment from a primary plan. *Id.*; *see also Glover I*, 380 F. Supp. 2d

3    at 1282 (citing *United States v. Baxter Int'l. Inc.*, 345 F.3d 866, 875 (11th Cir. 2003)); *Manning v.*

4    *Utils. Mut. Ins. Co.*, 254 F.3d 387, 391 (2d Cir. 2001)). If a primary plan fails to pay or to

5    reimburse Medicare under the MSP provisions for conditional payments, the government may

6    bring an action for double damages against that primary plan (or any recipient of the primary

7    plan's payment) for services paid by Medicare. 42 U.S.C. § 1395y(b)(2)(B)(iii).

8        In 1986, Congress added a private cause of action to the MSP. Omnibus Budget

9    Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986). The amendment

10   allowed Medicare beneficiaries whose medical treatment was paid for by Medicare, but should

11   have been paid for by a primary plan, to recover double damages from the primary plan. The

12   provision for double damages provides an incentive to aggrieved beneficiaries to bring claims

13   against primary plans that fail to make payments for which they are responsible, while ensuring

14   that Medicare can recoup payments it made when another insurer was liable under the statute.

15   *See Frazer v. CNA Ins. Co.*, 374 F. Supp. 2d 1067, 1077-78 (N.D. Ala. 2005).

16       During the 20 years since the addition of this private right of action, numerous courts have

17   addressed various provisions of the MSP. Also, Congress has further amended the MSP on a

18   number of occasions. As recently as 2003, in the Medicare Prescription Drug Improvement and

19   Modernization Act of 2003 ("MMA"), Congress modified provisions of the MSP to clarify,

20   among other things, what parties may be "primary plans" subject to the MSP's payment scheme.

21   *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. Law 108-

22   173, § 301, 117 Stat. 2066, 2221-23 (2003).

23       Since Congress added a private cause of action to the MSP in 1986, no court has allowed

24   persons who are not Medicare beneficiaries to sue under the MSP to recover damages either on

25   behalf of the government or on behalf of those who were, in fact, Medicare beneficiaries.

26   Similarly, no court has ruled that allegations of inchoate, potential tort liability not reduced to

27   judgment, settlement, or some other form of concrete resolution suffice to trigger a payment

28   responsibility under the MSP. To the extent plaintiff groups have occasionally advanced such

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

3

1    theories, they have been rebuffed. *See, e.g., Glover I*, 380 F. Supp. 2d at 1290; *Mason v. Am.*

2    *Tobacco Co.*, 346 F.3d 36, 43 (2d Cir. 2003).

3    **B.    Plaintiff's Allegations**

4    The instant lawsuit is brought by Plaintiff "on behalf of the United States." According to

5    Plaintiff's skeletal allegations in her complaint, Defendant "caused harm to Medicare recipients

6    who were patients in Community Medical's hospitals, thereby triggering legal obligation[s] on

7    the part of Community Medical . . . to pay for any consequential medical service, treatment, or

8    medication." Complaint ¶ 6. The complaint alleges that Defendant "breached [its] duties to

9    Medicare by not paying for the care that injured Medicare recipients received as a result of

10    Community Medical's conduct and further by not reimbursing Medicare after Medicare provided

11    conditional payment for the care that such Medicare recipients received as a result of Community

12    Medical's conduct." *Id.* ¶ 8.

13    Plaintiff does not plead that she was such a Medicare recipient, nor does she plead that she

14    was an insured who was denied coverage by a "primary" insurer, as that term is used in the MSP

15    statute. Plaintiff has not asserted that she is over 65 years of age, disabled, or suffering from end-

16    stage renal disease. Plaintiff, does not even plead that she is eligible to receive Medicare benefits.

17    Likewise, Plaintiff does not plead that she was personally injured by Defendant's alleged conduct.

**IV.**
**LAW AND ARGUMENT**

**A.    Standards on Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6)**

21    Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint in the

22    event of the court's "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(l).

23    Because Article III standing implicates the jurisdictional power of the court to decide a case, this

24    Court must address constitutional standing issues before proceeding to the merits. *Friery v. Los*

25    *Angeles Unified School Dist.*, 448 F.3d 1146, 1148 (9th Cir. 2006). In reviewing a factual

26    challenge to subject matter jurisdiction, "the court need not presume the truthfulness of the

27    allegations." *White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000) (citing Wm. Moore, et. al.,

28    *Moore's Federal Practice* ¶ 12.30[4] at 12-38 (ed. 1999). Indeed, courts have broad power to

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

4

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  look beyond the pleadings to resolve factual challenges with regard to jurisdiction without having

2  to convert the motion to one for summary judgment. *See Safe Air for Everyone v. Meyer*, 373

3  F.3d 1035, 1039 (9th Cir. 2004).

4      A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

5  Procedure when it appears beyond doubt that the plaintiff can prove no set of facts in support of

6  his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

7  Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts

8  alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

9  534 (9th Cir. 1984). Dismissal should be entered when it "appears to a certainty under existing

10  law that no relief can be granted under any set of facts that might be proved in support of

11  plaintiff's claims." *Rae v. Union Bank*, 725 F.2d 478, 479 (9th Cir. 1984); *see also De La Cruz v.

12  Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). While a court is generally limited to facts alleged in the

13  complaint, and exhibits attached thereto, a court may also consider judicially noticeable facts in

14  deciding a motion to dismiss for failure to state a claim. *MGIC Indem. Corp. v. Weisman*, 803

15  F.2d 500, 504 (9th Cir. 1986). Furthermore, a court may properly consider matters of public

16  record including records and reports of administrative bodies. *See Mack v. S. Bay Beer Distribs.*,

17  798 F.2d 1279, 1282 (9th Cir. 1986).

18  **B.**    **Plaintiff Lacks Standing to Assert Claims under the MSP Statute.**

19      1.    Plaintiff Fails to Allege any Facts Establishing that She has Article III Standing.

20      "No principle is more fundamental to the judiciary's proper role in our system of

21  government than the constitutional limitation of federal-court jurisdiction to actual cases or

22  controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). A plaintiff's

23  standing to maintain her lawsuit is "an essential and unchanging part of the case-or-controversy

24  requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, the

25  Article III standing requirements "are not mere pleading requirements but rather an indispensable

26  part of the plaintiff's case," *Lujan*, 504 U.S. at 561, and these requirements "determin[e] the

27  power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[T]he

28  standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

5

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the

2  court's remedial powers on his behalf." *Id.* at 498-99 (citing *Baker v. Carr*, 369 U.S. 186, 204

3  (1962).)

4      Plaintiff has the burden to establish her standing to sue under Article III. *Lujan*, 504 U.S.

5  at 561.   To satisfy that burden, she must establish three "irreducible constitutional minimum"

6  requirements:

> First, the plaintiff must have suffered an "injury in fact" – an
> invasion of a legally protected interest which is (a) concrete and
> particularized . . . and (b) "actual or imminent, not 'conjectural' or
> 'hypothetical . . . .'"   Second, there must be a causal connection
> between the injury and the conduct complained of – the injury has
> to be "fairly . . . trace[able] to the challenged action of the
> defendant, and not . . . the result [of] the independent action of
> some third party not before the court . . . ."   Third, it must be
> "likely," as opposed to merely "speculative," that the injury will be
> "redressed by a favorable decision."

*Id.* at 560-61 (citations omitted).

13      The complaint here fails to satisfy any of these fundamental Article III standing

14  requirements because Plaintiff alleges no injury in fact to herself as a result of Defendant's

15  alleged violations of the MSP.  In fact, there are no particularized allegations about Plaintiff in the

16  entire complaint.  Plaintiff's complaint is totally devoid of any allegation that Plaintiff suffered

17  any damage.  She does not allege that she is a Medicare beneficiary or even eligible to receive

18  Medicare benefits.   The absence of any injury precludes Plaintiff from establishing any

19  connection between any "injury" and Defendant.  Consequently, there is absolutely no connection

20  between Plaintiff and the claims she seeks to redress.

21      To the Defendant's knowledge, no court in any jurisdiction has ever afforded such an

22  uninjured plaintiff standing to litigate alleged violations of the MSP.  To the contrary, in MSP

23  actions like this one—where the plaintiff "has not alleged that she has been injured nor even that

24  she faces the prospect of injury"—courts have found that the plaintiff lacks the requisite Article

25  III standing to litigate her MSP claims. *Frazer*, 374 F. Supp. at 1083 (plaintiff lacked standing

26  under Article III to sustain MSP action); *cf. Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,

27  116 F.3d 1364, 1378 (11th Cir. 1997) (stating that a group of plaintiffs who alleged actual injury,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
6 20 60 E
FRESNO, CA 93720-1501

6

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   but were not aggrieved beneficiaries, lacked statutory standing).

2          Without the constitutional minimum of injury in fact, Plaintiff cannot proceed with her

3   claim, and it must be dismissed under Rule 12(b)(l) for lack of subject matter jurisdiction.

4          2.     Plaintiff does not have Standing under a "Private Attorney General" Theory.

5          Plaintiff appears to allege that she is able to bring suit "on behalf of the United States of

6   America." Complaint ¶ 2. To the extent Plaintiff attempts to cast her claim as a "private attorney

7   general" action, she would still have to plead and prove an injury in fact in order to have standing.

8   *Lujan*, 504 U.S. at 561-62. *See generally* Pamela Karlan, *Disarming the Private Attorney*

9   *General*, 2003 ILL. L. REV. 183, 186 (private attorney general statutes "provid[e] a cause of action

10  for individuals who have been injured by the conduct Congress wishes to proscribe, usually with

11  the additional incentive of attorney's fees for a prevailing plaintiff"). Indeed, where a plaintiff

12  seeks to bring claims on behalf of third parties, standing "is ordinarily 'substantially more

13  difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758

14  (1984)).

15          Congress may grant an express right of action to persons who
             otherwise would be barred by prudential standing rules. **Of course,**
16          **Art[icle] III's requirement remains:   the plaintiff still must**
             **allege a distinct and palpable injury to himself, even if it is an**
17          **injury shared by a large class of other possible litigants.**

18  *Warth*, 422 U.S. at 501 (emphasis added); *see also, e.g., Powers v. Ohio*, 499 U.S. 400, 411

19  (1991) (stating that a plaintiff proceeding as private attorney general to vindicate rights of third

20  parties still "must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete

21  interest' in the outcome of the issue in dispute") (citation omitted); *Frazer*, 374 F. Supp. 2d at

22  1083 ("a private attorney general must satisfy Article III standing requirements in order to bring a

23  suit in federal court"). As discussed above, Plaintiff has not alleged any injury to herself that

24  would enable her to have standing to maintain this action, either for herself or as a private

25  attorney general on behalf of third-party Medicare beneficiaries.

26          3.     The MSP is not a *Qui Tam* Statute that affords Standing to Plaintiff.

27          Although Plaintiff does not specifically refer to the MSP as a *qui tam* statute in her

28  Complaint, Plaintiff has unsuccessfully made such claims in similar suits and is likely to do so in

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

7

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   her opposition to this Motion.  Plaintiff does not have Article III standing to bring this action

2   under 42 U.S.C. § 1395y(b)(3)(A) on behalf of the United States.  Plaintiff's argument that the

3   MSP is a *qui tam* statute fails for numerous reasons.

4        First, by its express terms, Section 1395y(b)(3)(A) provides for a "private cause of action

5   for damages" (emphasis added), not an action on behalf of the United States.  Under settled rules

6   pertaining to the interpretation of *qui tam* statutes, the MSP cannot be construed to authorize suit

7   on behalf of the federal government unless there is clear congressional authorization for a *qui tam*

8   claim.  *E.g.*, *United States ex rel. St. Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co.*,

9   451 F.3d 44, 53 (2d Cir. 2006) (*qui tam* claim must be authorized by statute); *United States at rel.*

10   *Mattson v. Nw. Paper Co.*, 327 F. Supp. 87, 93 (D. Minn. 1971) ("The right to proceed *qui tam* . .

11   . arises only by affirmative statutory authorization.  In the absence of some unambiguous

12   statutory authorization, [a purported *qui tam* relator] may not so proceed."); *Marra v. Burgdorf*

13   *Realtors, Inc.*, 726 F. Supp. 1000, 1013 (E.D. Pa. 1989) ("Since the *qui tam* action requires the

14   delegation of some sovereign attributes, it is logical that some clear statutory indication be

15   required before they be delegated.").   An explicit congressional authorization is necessary

16   because a *qui tam* involves "the delegation of some sovereign attributes" from the government to

17   a private citizen.  Therefore, "*qui tam* actions are . . . invoked sparingly."  *Marra*, 726 F. Supp. at

18   1013.  Here, however, the MSP's language provides no affirmative statutory authorization for a

19   *qui tam* cause of action.  For this reason, no court anywhere has ever authorized a *qui tam* lawsuit

20   based on the MSP.   Indeed, any recovery in an MSP case goes to the plaintiff, not the

21   Government.  *See* 42 U.S.C. § 1395y(b)(3)(A).

22        Second, the MSP does not have any of the protections provided by modern *qui tam*

23   statutes.  It is settled law that where private citizens are given right to sue on behalf of the United

24   States, the government must retain sufficient control over the suit for the statute to pass

25   constitutional muster.  Perhaps, the most notable *qui tam* statute is the False Claims Act ("FCA").

26   It expressly states that "[a] person may bring a civil action . . . for the person ***and for the United***

27   ***States Government.***   31 U.S.C. § 3730(b) (emphasis added).   Unlike the FCA's *qui tam*

28   provision, the MSP's private right of action does not have any substantive and procedural

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  safeguards necessary to protect the government's interests and alleviate Constitutional concerns

2  that otherwise arise when sovereign authority is delegated to a private citizen. *United States at*

3  *rel. Kelly v. Boeing Co.*, 9 F.3d 743, 755 (9th Cir. 1993) ("the FCA gives the Attorney General

4  sufficient means of controlling or supervising relators to satisfy separation of powers concerns");

5  *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753-58 (5th Cir. 2001) (*en banc*) (protections

6  afforded in FCA's *qui tam* provisions satisfy Article III); *United States ex rel. Madden v. Gen.*

7  *Dynamics Corp.*, 4 F.3d 827, 829 (9th Cir. 1993) (affirming district court's ruling that *qui tam*

8  provisions of FCA are constitutional because "these suits are still sufficiently within the control

9  of the Attorney General"). The provisions of the FCA require the following:

10
11
>  1.  a private *qui tam* plaintiff must serve the complaint and a written disclosure of material evidence on the Government before the complaint is served on the defendant;

12
13
>  2.  the complaint must be filed *in camera*, must remain under seal while the Government conducts an investigation, and must not be served on the defendant except by court order;

14
15
16
17
>  3.  the Government must either intervene in the action – in which case it assumes primary responsibility for prosecuting the case, is not bound by the actions of the private plaintiff, and may limit the private plaintiff's participation – or inform the court that the private plaintiff will prosecute the action;

18
>  4.  the Government is permitted to dismiss or settle the action over the objections of the private plaintiff;

19
20
>  5.  the Government may request a stay of discovery if discovery would interfere with the Government's investigation or prosecution of a related matter;

21
22
>  6.  the Government must provide written consent before a case may be dismissed;

23
>  7.  the Government is protected from liability for the litigation expenses of the *qui tam* relator; and

24
>  8.  the Government receives at least 70-85% of any recovery.

25  31 U.S.C. § 3730(b)-(f).[2]  None of these essential Constitutional and procedural safeguards are

26

27
28
---
[2] State *qui tam* statutes afford similar protections to the interests of the State. *See, e.g.*, California False Claims Act, Cal. Gov. Code §12652(c) (2006); Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.101 et seq. (2006).

1    present in the MSP. Instead, Plaintiff seeks to proceed with a purported *qui tam* action on behalf

2    of the Government where the Government would have no right to generate, appoint the

3    prosecutor of, supervise, intervene in, influence, or control the litigation, or otherwise protect its

4    interests and ensure that the Executive Branch takes care that the laws be faithfully executed.

5           Third, Plaintiff's assertion that the MSP is *a qui tam* statute is further belied by the fact

6    that the MSP's private right of action was enacted during the same month and year that the

7    Congress created the FCA's very different, and very clear, *qui tam* language. *See* Omnibus

8    Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986) (adding

9    private cause of action to MSP); False Claims Amendments Act of 1986, Pub. L. No. 99-562, 100

10   Stat. 3153 (1986) (creating new FCA *qui tam* action). Indeed, final congressional approval to

11   legislation adding the MSP private cause of action came ten days after final approval of the FCA

12   amendments. *See* 1986 U.S.C.C.A.N. 3868, 5266. Congress's contemporaneous enactment of an

13   express *qui tam* action in the FCA is compelling proof that it did not intend for the MSP's private

14   right of action, which lacks any similar express authorization, to provide private plaintiffs with

15   standing to sue on behalf of the Government. *See Touche Ross & Co. v. Redington*, 442 U.S. 560,

16   571-72 (1979) (inclusion of private remedy in one statute, but not in second, contemporaneously

17   adopted statute, demonstrates that Congress did not intend to create that remedy in second statute;

18   "obviously, then, when Congress wished to provide [such a remedy], it knew how to do so and

19   did so expressly"); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-23 (1979)

20   (inclusion of private remedy in one statute but not in second related statute "strongly suggests"

21   Congress deliberately chose not to create such a remedy in the second statute); *Walls v. Wells*

22   *Fargo Bank, N.A.*, 276 F.3d 502, 508-09 (9th Cir. 2002) (fact that only one of two

23   contemporaneously enacted statutes contains private remedy "is a strong indication that

24   [Congress] did not intend any such remedy" in the second statute).

25          Fourth, it is contrary to statutory construction pertaining to *qui tam* statutes to interpret

26   Section 1395y(b)(3)(A) of the MSP as a *qui tam* statute because the MSP already provides the

27   Government with an exclusive cause of action for double damages against a primary plan (or any

28   recipient of the primary plan's payment) for services paid by Medicare, where the primary plan

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

10

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   fails to pay or reimburse Medicare. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii). The existence of a

2   separate cause of action that may be brought exclusively by the United States is strong evidence

3   that the MSP's private cause of action does not authorize a *qui tam* claim on behalf of the

4   Government. *See Marra*, 726 F. Supp. at 1013 ("even statutory language that seems to grant a

5   *qui tam* action will not be held.to do so if other language places enforcement in the hands of

6   governmental authorities"); *Bass Anglers Sportsman Soc. v. U.S. Steel Corp.*, 324 F. Supp. 412,

7   415 (N.D. Ala. 1971).

8         Fifth, statutes that provide informers with a "bounty" from any penalty or forfeiture as an

9   incentive to bring suit are not automatically construed as *qui tam* statutes, thereby providing a

10  private plaintiffs with the requisite standing. The case law is clear that an interest in a bounty that

11  is "unrelated to injury in fact" and "that is merely a 'byproduct' of the suit itself cannot give rise

12  to a cognizable injury in fact for Article III standing purposes." *Vermont Agency of Natural Res.*

13  *v. United States ex rel. Stevens*, 529 U.S. 765, 772-73 (2000) (the "bounty [a plaintiff] will

14  receive, if the suit is successful" is merely a "concrete private interest in the outcome of [the]

15  suit," analogous to "someone who has placed a wager upon the outcome") (internal quotation

16  marks and citation omitted). And although the Supreme Court in *Vermont Agency of Natural Res.*

17  acknowledged that "adequate basis for the relator's suit for his bounty [in a claim under the *qui*

18  *tam* provision of the FCA] is to be found in the doctrine that the assignee of a claim has standing

19  to assert the injury in fact suffered by the assignor" (*id.* at 773), Plaintiff has neither pleaded nor

20  argued that she has been assigned the Government's cause of action under 42 U.S.C. §

21  1395y(b)(2)(B)(iii).

22        Finally, Plaintiff cannot rely on *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541

23  n.4 (1943), for the proposition that statutes providing for recovery for an informer "that neither

24  expressly authorize nor expressly forbid the informer to initiate an action 'are construed to

25  authorize him to sue.'" The statute at issue in *Marcus* expressly authorized suit by an informer,

26  and numerous courts have since recognized that the statement from *Marcus* is *dicta*. *See Conn.*

27  *Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 84-85 & n.5 (2d Cir. 1972); *Mitchell v.*

28  *Tenneco Chemicals, Inc.*, 331 F. Supp. 1031, 1032 (D.S.C. 1971); *Enquist v. Quaker Oats Co.*,

1   327 F. Supp. 347, 348 (D. Neb. 1971); *Mattson*, 327 F. Supp. at 91; *United States v. Florida-*

2   *Vanderbilt Dev. Corp.*, 326 F. Supp. 289, 290 (S.D. Fla. 1971); *Bass Anglers Sportsman's Soc. v.*

3   *U.S. Plywood-Champion Papers, Inc.*, 324 F. Supp. 302, 305-06 (S.D. Tex. 1971).

4       For all these foregoing reasons, the MSP clearly is not a *qui tam* statute, and Plaintiff

5   lacks standing under Section 1395y(b)(3)(A) to litigate a claim on behalf of the United States.

6   Consequently, her lawsuit should be dismissed under Rule 12(6)(1) on this basis.

7   **C.    Liability Under The MSP Cannot Be Premised Upon Unadjudicated Or Potential**
        **Tort Claims.**
8

9       Independent of the fatal absence of standing, Plaintiff's Complaint fails to state any viable

10  claim under the MSP. In order to state a claim under the MSP private cause of action, Plaintiff

11  must allege facts establishing that: (1) each defendant is a "primary plan" liable to pay for an

12  item or service as a "primary plan"; and (2) each defendant failed to make the appropriate

13  payment to Medicare for the item or service. *See, e.g., Glover I*, 380 F. Supp. 2d at 1290. Here,

14  Plaintiff relies on allegations of unspecified, unsubstantiated potential tort claims that supposedly

15  established Defendant's theoretical liability to pay for medical services under the MSP. *See*

16  Complaint ¶¶ 7-13. In essence, Plaintiff contends that Defendant at unspecified times committed

17  unspecified malpractice on various unspecified patients, and billed unspecified amounts for

18  treatment of that malpractice to Medicare rather than absorbing or paying for the costs

19  themselves. MSP liability, however, cannot be demonstrated based upon such speculative

20  allegations.

21       1.    The MSP Statute Requires a "Demonstrated" Obligation to Pay.

22       The plain text of the MSP belies Plaintiff's theory of liability. Under the MSP, primary

23  plans, and entities that receive payments from primary plans, are required to reimburse Medicare

24  ***only*** "if it is ***demonstrated*** that such primary plan has or had a responsibility to make payment

25  [for an item or service for which Medicare previously paid]." 42 U.S.C. § 1395y(b)(2)(B)(ii)

26  (emphasis added); *see also Glover I*, 380 F. Supp. 2d at 1290. The MSP further explains that:

27           A primary plan's responsibility for such payment may be
             demonstrated by a judgment, a payment conditioned upon the
28           recipient's compromise, waiver, or release (whether or not there is a

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

12

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1
2

> determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

3
4
5
6
7

42 U.S.C. § 1395y(b)(2)(B)(ii). This section specifically enumerates the methods by which a primary plan's responsibility may be demonstrated: (1) a judgment, (2) a payment conditioned upon the recipient's compromise, (3) a waiver, or (4) a release of payment. *Id.* Under each of these specifically enumerated methods, the obligation to pay is established by either an adjudication or settlement of claims. *See id.*; *see also Glover I*, 380 F. Supp. 2d at 1291.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

But Plaintiff's complaint identifies no judgment, settlement, or similar resolution of any supposed malpractice claims against Defendant. Instead, she contends that alleged initial wrongdoing—the alleged misdiagnosis or mistreatment that might later serve as the basis of a malpractice claim—automatically triggers the Defendant's ultimate obligation to pay under the MSP. In cases involving inchoate potential tort liability, however, there is no determination at the time of the alleged tort that the alleged tortfeasor is responsible for medical costs. Consequently, courts that have considered Plaintiff's theory have uniformly concluded that unadjudicated or potential tort claims cannot establish liability under the MSP. As the court noted in *Glover I*, "it cannot be 'demonstrated' that an alleged tortfeasor, which has neither been adjudicated as liable nor has agreed to settle a tort claim, 'has' an existing 'responsibility' to reimburse Medicare or 'had' a previous responsibility to do so." *Glover I*, 380 F. Supp. 2d at 1290; *see also, e.g., Mason*, 346 F.3d at 43 ("the trigger for bringing a MSP claim is not the pendency of a disputed tort claim, but the ***established obligation*** to pay medical costs pursuant to a pre-existing arrangement to provide insurance benefits") (emphasis added). Furthermore, the Eleventh Circuit agreed with the *Glover I* district court that "an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can correctly be brought under § 1395y(b)(3)(A)." *Glover II*, 459 F.3d at 1309; *see also United Seniors Ass'n, Inc. v. Philip Morris U.S.A.*, No. 05-11623-RGS, 2006 U.S. Dist. LEXIS 60729, at *11-12 (D. Mass. Aug. 28, 2006).

Like the plaintiffs in *Glover*, Plaintiff may argue that the phrase "by other means" in 42

28

13

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   U.S.C. § 1395y(b)(2)(B)(ii) somehow forgives her failure to allege that an obligation to reimburse

2   the Medicare has previously been demonstrated by a judgment or settlement.  As the *Glover I*

3   court recognized, however, that argument is not sustainable under traditional canons of statutory

4   construction: "where general words follow specific words in a statutory enumeration, the general

5   words are construed to embrace only objects similar in nature to those objects enumerated by the

6   preceding specific words."  *Glover I*, 380 F. Supp. 2d at 1291 (quoting *Washington State Dep't.*

7   *of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003)); *see also,*

8   *e.g.*, *Sutton v. Providence St. Joseph Med. Cm*, 192 F.3d 826, 834 (9th Cir. 1999).  In the relevant

9   provision of the MSP, the specifically enumerated examples of how responsibility to pay can be

10  demonstrated preceding the phrase "by other means" each contemplate a pre-existing obligation

11  to pay.  *See* 42 U.S.C. § 1395y(b)(2)(B)(ii) ("a judgment," "a payment conditioned upon the

12  recipient's compromise," "waiver," or "release, . . . or by other means").  Applying settled rules

13  of statutory construction, the phrase "by other means" must therefore be construed to encompass

14  only situations "of like kind," where the obligation to pay has been previously determined.  That

15  was the inescapable conclusion in *Glover I*:

16          The "by other means" language . . . encompasses other instances of
                "like kind" where there is a ***previously*** established requirement of
17          agreement to pay for the medical services for which Medicare is
                entitled to be reimbursed, which instances Congress chose not to try
18          to exhaustively enumerate.  The "by other means" language . . .
                does not encompass the unresolved, unestablished tort claim
19          plaintiffs rely upon to demonstrate defendants' responsibility to
                reimburse Medicare.
20

21  380 F. Supp. 2d at 1291 (emphasis added).  The Eleventh Circuit emphatically agreed just a few

22  months ago.  *Glover II*, 459 F.3d at 1308 ("Plaintiffs argue . . . that Defendants' responsibility to

23  pay a Medicare beneficiary's health care expenses can be demonstrated by litigating [the

24  underlying] claim *during* the MSP private cause of action for failure to reimburse Medicare.  We

25  disagree.") (emphasis in original).  The Second Circuit reached the same conclusion three years

26  ago.  *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 43 (2d Cir. 2003) (affirming dismissal of claim

27  under MSP's private cause of action where the defendants' legal liability for Medicare costs had

28  not yet been established).  Similarly, another court reached the same result just two months ago.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

14

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    *United Seniors*, No. 05-11623-RGS, 2006 U.S. Dist. LEXIS 60729, at *11-14 (relying on *Glover*

2    *II* to dismiss MSP claim where plaintiff sought, on behalf of Medicare program, to recover from

3    tobacco companies the health care reimbursements made by Medicare to treat smoking-related

4    diseases where companies had never been found liable for those costs).

5        In short, the plain language of the MSP statute does not support the theory that

6    unadjudicated potential claims may be litigated under the MSP to trigger liability.  As such,

7    Plaintiff cannot state a claim under the MSP based upon unspecified "admissions" or "findings"

8    of medical error.

9        2.     The Administrative Record and Legislative History do not Support MSP Liability

10                for Unadjudicated or Potential Tort Claims.

11        The administrative record makes clear that the Center for Medicare and Medicaid

12    ("CMS")—the government agency charged with administering Medicare—also rejects Plaintiff's

13    theory.  CMS does not view unadjudicated tort claims as establishing liability under the MSP.

14    Rather, CMS will "pay for the beneficiary's care in the usual manner and then seek

15    reimbursement from the private insurance carrier ***after, and to the extent that, such carrier's***

16    ***liability under the private policy for the services has been determined.***"  Medicare as Secondary

17    Payer and Medicare Recovery Against Third Parties, 54 Fed. Reg. 41, 727 (Oct. 11, 1989)

18    (emphasis added); *see also* 42 C.F.R. § 411.52.  Indeed, according to CMS's Medicare Secondary

19    Payer Manual, Medicare is not entitled to recover conditional payments until ***after*** "a settlement

20    is reached between the beneficiary and the liable party or a court renders a judgment . . . ."

21    Medicare Secondary Payer Manual Ch. 7 § 50.4.1.  "Medicare's claim comes into existence by

22    operation of law (42 U.S.C. 1395y(b)(2)(B)(ii)) when payment for medical expenses that

23    Medicare conditionally paid for has been made by a third party payer." *Id.*

24        The legislative history of the MSP also fails to support Plaintiff's theory of liability.  That

25    history indicates that Congress intended to establish a primary plan's obligation to pay only after

26    there has been a determination of liability.  The committee report to the Medicare Prescription

27    Drug Improvement and Modernization Act of 2003 ("MMA"), which amended the MSP to clarify

28    when parties were required to reimburse Medicare for conditional payments, recognized that "[a]

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 River Place East
Fresno, CA 93729-1501

1   primary plan, as well as an entity that receives payment from a primary plan, would be required to

2   reimburse the Medicare Trust Funds for any payment made by the Secretary if the primary plan

3   was **obligated to make payment."** H.R. Rep. 108-178(II) (2003) (emphasis added); *see also*

4   *Glover I*, 380 F. Supp. 2d at 1296.  The legislative history to the MMA amendments also includes

5   relevant statements by the Department of Justice.  Before the House Ways and Means Committee

6   on July 17, 2003, William H. Jordan, Senior Counsel to the Assistant Attorney General for the

7   Civil Division, testified in favor of the MMA amendments to the MSP:

> 8   Finally, I would like to restate the Department's support for section
> 9   301 of H.R. 1, the 'Medicare Prescription Drug and Modernization
>     Act of 2003,' which would protect the integrity of the Medicare
>     Trust Fund by clarifying that Medicare must be reimbursed
> 10  **whenever another insurer's responsibility to pay has been
>     established.   Congress recognized, however, that in contested**
> 11  **cases, payments under such plans would be delayed.**  To protect
>     providers, suppliers, and beneficiaries, Congress authorized
> 12  Medicare to make a "conditional" payment when prompt resolution
>     of a claim cannot reasonably be expected.   The Medicare Trust
> 13  Fund must be reimbursed, however, *once the primary insurer's
>     obligation to pay is demonstrated.*
> 14

15   *Waste, Fraud, and Abuse: Hearing Before the House Comm. On Ways and Means*, 108th Cong.

16   88 (2003) (statement of William H. Jordan), *available at* 2003 WL 21667339 (emphasis added).

17       Given the plain language of the MSP, fundamental canons of statutory construction, the

18   interpretation of the agency charged with implementation of the MSP provision, and other

19   sources of legislative intent, Plaintiff's reliance on unidentified, unadjudicated, inchoate tort

20   claims is insufficient as a matter of law to demonstrate that the Defendant was liable to pay for

21   any item or service. *See Glover I*, 380 F. Supp. 2d at 1290.

22       3.    Principles Of Federalism Counsel Against Interpreting The MSP To Create A
             Private Cause Of Action Based Upon Inchoate, Potential Tort Claims.
23

24       Any doubt about whether a claim can be stated under the MSP based on inchoate potential

25   tort claims should be eliminated by considering basic principles of federalism.  Plaintiff's theory

26   would significantly shift the power and responsibility of federal courts to resolve what amount to

27   unarticulated and speculative state-law tort claims involving unrelated incidents of alleged

28   medical malpractice.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

16

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    It is widely recognized that "tort law . . . belongs almost exclusively to the states." *In re*

2    *Asbestos Litig.*, 829 F.2d 1233, 1243 (3d Cir. 1987). The power of Congress to "legislate in areas

3    traditionally regulated by the States" is "an extraordinary power in a federalist system," and "a

4    power that we must assume Congress does not exercise lightly." *Gregory v. Ashcroft*, 501 U.S.

5    452, 460 (1991). Thus, the Supreme Court has ruled that when making law that impacts the

6    federal-state balance, Congress must make "its intentions to do so unmistakably clear in the

7    language of the statute." *Id.* at 460-61 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234,

8    242 (1985)) (internal quotations omitted); *accord Raygor v. Regents of the Univ. of Minnesota*,

9    534 U.S. 533, 543-44 (2002).

10    Here, Plaintiff contends that the MSP is a procedural device that allows her to bring a

11    massive tort action in ***federal*** court to determine ***state-law*** liability and MSP liability

12    simultaneously. She asserts that this dispute would create federal-question jurisdiction before this

13    Court; no showing of diversity or jurisdictional amount would be required with respect to the

14    countless underlying, otherwise unrelated incidents of supposed inchoate state-law tort liability.

15    *Cf.* Complaint ¶¶ 6, 10 (citing unrelated, alleged harms to different Medicare beneficiaries).

16    Plaintiff's theory would work a massive expansion of federal power over traditionally state-law

17    tort claims. It would shift the federal-state balance considerably.

18    But there is no language in the MSP signaling such a federal power grab, let alone the

19    "unmistakably clear" language required by the Supreme Court in *Gregory*. *Gregory*, 501 U.S. at

20    460-61. As demonstrated above, there is nothing in the text of the MSP, or even its legislative

21    history, that remotely suggests that Congress intended to upend the traditional federal-state

22    balance in this manner. If Congress had intended "to take the significant, additional step" of

23    allowing a plaintiff like Plaintiff to try to prove Defendant's state law tort liability within an MSP

24    private right of action, "it would have explicitly said so." *Glover I*, 380 F. Supp. 2d at 1292. As

25    the *Glover I* court further observed:

26          The absence of legislative history supporting plaintiffs'
      interpretation of the MSP is more significant when one considers

27          the consequences of plaintiffs' position, namely that virtually every
      state law tort claim involving a Medicare beneficiary would become

28          a federal lawsuit for double damages under the MSP. It is unlikely

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

17

1

2

> that Congress intended to create such a cause of action under the
> MSP but failed to mention anything about it in the legislative
> history.

3

4

*Id.* at 1297-98.   Accordingly, Plaintiff's attempt to stretch the MSP far beyond its intended

dimensions should be rejected.

5

6

**D.      This Lawsuit Does Not Present A Justiciable Controversy.**

Plaintiff's complaint attempts to sweep far beyond the concrete circumstances

7

8

contemplated by the MSP.   She desires to adjudicate every instance of Medicare beneficiaries'

potential malpractice claims against Defendant—all in a single, federal action.   Assuming

9

10

*arguendo* that she had standing to bring an MSP action, she does not even attempt to plead how

she would have standing to step in and adjudicate what amount to other people's private actions

11

12

for malpractice.   *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (discussing limitations on

third-party standing).

13

14

More basically, Plaintiff is trying to evade the Federal Rules of Civil Procedure, which

place limitations on the adjudication of numerous claims of different persons in a single

15

16

proceeding.     She is essentially attempting a class action without meeting class action

requirements.   *See Glover II*, 459 F.3d at 1309 ("Plaintiffs' proposed interpretation [of the MSP]

17

18

would allow individuals acting as private attorney generals to litigate the state tort liability of a

defendant towards thousands of Medicare beneficiaries—as a predicate to showing MSP

19

20

liability—without complying with class action requirements").   The Federal Rules, however,

provide for mass adjudication of claims only in limited circumstances.   As the Supreme Court has

21

22

explained, aggregate litigation is supposed to be the exception in federal court, not the rule:   class

actions are an "exception to the usual rule that litigation is conducted by and on behalf of the

23

24

individual named parties only."   *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); *Deiter v.*

*Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).   As a result, the Federal Rules impose

25

26

important requirements on litigants who seek to aggregate the claims of others into a single

proceeding.   E.g., *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999); *Amchem Prods., Inc. v.*

27

28

*Windsor*, 521 U.S. 591, 626 (1997).   Plaintiff's Complaint, however, ignores these bedrock

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

18

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    principles of aggregate litigation.

2           Moreover, Plaintiff cannot explain how she has the right to comb through the private

3    medical records of countless, unspecified Medicare beneficiaries at the numerous hospitals

4    applicable to her lawsuit, looking for potential instances of malpractice—a deficiency made all

5    the more acute by the privacy regulations adopted pursuant to the Health Insurance Portability

6    and Accountability Act, 45 CFR Parts 160 and 164.

7           But presume for purposes of argument that Plaintiff had that authority and could pursue

8    that course. What this Court would find is inherently not justiciable as an MSP claim. Even if

9    jurisdiction was established for Article III purposes, "courts are obliged to dismiss a case when

10   considerations of prudential ripeness are not satisfied." *Yahoo! Inc. v. La Ligue Contre Le*

11   *Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211 (9th Cir. 2006) (citing *Socialist Labor Party v.*

12   *Gilligan*, 406 U.S. 583, 588 (1972) ("Problems of prematurity and abstractness may well present

13   'insuperable obstacles' to the exercise of the Court's jurisdiction, even though that jurisdiction is

14   technically present.")). "In determining whether a case satisfies prudential requirements for

15   ripeness, courts consider two factors: 'the fitness of the issues for judicial decision,' and 'the

16   hardship to the parties of withholding court consideration.'" *Id.* (citing *Abbott Labs. v. Gardner*,

17   387 U.S. 136, 149 (1967)).

18          An issue is not "fit" for judicial decision where "the entire case is far too speculative for

19   resolution by a federal court," and "[f]urther delineation of the facts is necessary to shape the

20   issues for review." *Western Oil and Gas Ass'n v. Sonoma County*, 905 F.2d 1287, 1291 (9th Cir.

21   1990). That is precisely the case with Plaintiff's allegations of unspecified, inchoate malpractice

22   liability. Plaintiff seeks redress for vague allegations of tort liability, not for harms she suffered,

23   but on behalf of countless unidentified Medicare beneficiaries. She alleges that Defendant by and

24   through its employees and agents caused harm to these Medicare beneficiaries on numerous

25   isolated and unconnected occasions. Complaint ¶ 6. The only alleged "harm" is a laundry list of

26   potential medical care events, including pressure sores, infections, falls, and other incidents of

27   alleged malpractice. *See id.* ¶ 13. Plaintiff's allegations presume not only that malpractice

28   occurred, but that Defendant and its insurers were responsible. Moreover, the allegations

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

19

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  presume that Defendant is the correct party and would not have any defenses to any of the alleged

2  incidents.

3       In the real world, however, medical malpractice liability is highly fact-intensive.   The

4  existence of malpractice (whether caused by an independent contractor or an agent of a hospital),

5  the degree of liability, the potential for multiple liable parties, and potential defenses can be hotly

6  contested. *See, e.g.*, 31 Am. Jur. Proof of Facts §§ 10, 11 (noting need for expert testimony and

7  listing potential defenses to malpractice); *Ewing v. Northridge Hosp. Med. Ctr.*, 16 Cal. Rptr. 3d

8  591, 600 (Cal. Ct. App. 2004) (noting need for expert testimony in virtually all medical

9  malpractice actions).   These issues would need to be resolved for each incident of potential

10 malpractice underlying Plaintiff's allegations before this Court could adjudicate Defendant's

11 supposed liability in this MSP lawsuit.   Plaintiff's amorphous allegations do not make out a

12 justiciable controversy.

13       Moreover, dismissing Plaintiff's claim as nonjusticiable would not visit any undue

14 hardship upon her. To satisfy the hardship requirement, "a litigant must show that withholding

15 review would result in 'direct and immediate' hardship and would entail more than possible

16 financial loss." *Id.* (citing *Winter v. Cal. Med. Review*, 900 F.2d 1322, 1324 (9th Cir. 1990)). But

17 Plaintiff did not even suffer a financial loss here. Her only potential interest in the case is a

18 "bounty" in the form of double damages for injuries she never sustained. Loss of such a windfall

19 is no hardship at all.

20

                                              **V.**
                                        **CONCLUSION**

21

22       Based on the forgoing, Defendant respectfully requests that the Court grant its motion to

23 dismiss the instant complaint with prejudice, as it suffers from a number of incurable fatal flaws.

24 First, Plaintiff does not have standing to bring this case. Plaintiff does not claim that she is a

25 Medicare recipient, even eligible to receive Medicare benefits, or was actually injured by

26 Defendant's alleged conduct. Similarly, the MSP is not a *qui tam* statute that affords Plaintiff

27 standing. Second, in order to have any claim under the MSP, Plaintiff must allege that there has

28 been some prior determination that Defendant is responsible for paying amounts previously paid

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

20

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   by the Medicare program.  Plaintiff has not done so, and her allegations of unadjudicated or

2   potential tort liability are simply insufficient as a matter of law to establish that Defendant is

3   liable under the MSP.  Third, Plaintiff's claims are too attenuated and uncertain to adjudicate in

4   this lawsuit.  As a consequence, this matter, like its predecessors in the Central District, should be

5   dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

6   because Plaintiff fails to state a claim and cannot demonstrate her requisite standing.

7

8   Dated: November 21, 2006                    McCORMICK, BARSTOW, SHEPPARD,
                                                WAYTE & CARRUTH LLP

9

10                                      By:_____/s/ Michael G. Woods_____

11                                               Michael G. Woods
                                               Attorneys for Defendant

12                                      FRESNO COMMUNITY HOSPITAL
                                          AND MEDICAL CENTER dba

13                                      COMMUNITY MEDICAL CENTERS

14   15286/00004-1031337.v1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

EXHIBIT A



One night a week **for 15 months**

**7 convenient locations or o**

http://www.latimes.com/business/la-fi-brockovich10nov10,1,3589675.story

# Judge rejects Brockovich's role as plaintiff

**The federal jurist has dismissed many of the activist's Medicare suits against convalescent homes and hospitals.**
By Daniel Yi
Times Staff Writer

November 10, 2006

Erin Brockovich built a career as a celebrity crusader for weighty causes. But this time she was wrong for the role, according to a federal judge in Santa Ana.

U.S. District Judge David O. Carter has dismissed several lawsuits that Brockovich filed this summer on behalf of Medicare. Carter ruled that Brockovich has no standing to sue hospitals and convalescent homes to recoup allegedly illicit funds the healthcare providers received from the federally funded health plan for seniors and disabled people.

---

**FOR THE RECORD:**
Headline: An earlier version of this story's headline incorrectly read, "Judge requests Brockovich's role as plaintiff"

---

Brockovich and her lawyers claimed in state and federal courts that healthcare providers were pocketing millions of taxpayer dollars by charging Medicare for medical errors and then charging again to fix those errors. She brought the suits as a citizen acting on behalf of the government.

The lawsuits did not cite specific instances of wrongdoing, pointing instead to federal reports that estimated medical errors cost Medicare more than $9 billion a year. Brockovich and her lawyers hoped to find evidence in the course of trying the cases, and would have collected legal fees if they were successful.

They sued some of the nation's biggest hospital and nursing home chains, including Tenet Healthcare Corp., Adventist Health, Country Villa Service Corp., Catholic Healthcare West, Kindred Healthcare Inc. and Longwood Management Corp.

But Carter said Brockovich, a 46-year-old former legal assistant who became an instant celebrity after her environmental crusade against a utility company was made into a movie starring Julia Roberts, could not serve as a plaintiff. That's because she is not an injured party and there is no specific law that grants her the power to sue on behalf of the government in this case, the judge ruled.

# EXHIBIT A

Carter dismissed five of the lawsuits last month and this week issued tentative dismissals on 24 more. The 29 cases represent the bulk of the more than 30 lawsuits Brockovich and her lawyers filed in California. Two more cases are pending in a federal court in San Diego, another in Carter's court and at least one case in a state court in Fresno.

Attorneys for the hospitals called her crusade a waste of resources.

"There were 25 lawyers sitting in the courtroom all morning" waiting for the ruling Tuesday, said Mark A. Johnson, an attorney at Hooper, Lundy & Bookman Inc., which represented several defendants. "What was that costing the healthcare providers? That's resources that could have gone into actual healthcare."

The main law firm representing Brockovich, Wilkes & McHugh, has filed similar lawsuits elsewhere in the country using other plaintiffs. The law firm, which has an office in Rancho Palos Verdes, did not return calls for comment Wednesday.

But Brockovich issued a statement through an assistant that said she would appeal Carter's decision.

"I am proud to be a consumer advocate on this issue and will continue to be," she said.

*daniel.yi@latimes.com*

Copyright 2006 Los Angeles Times | Privacy Policy | Terms of Service
Home Delivery | Advertise | Archives | Contact | Site Map | Help

PARTNERS:    ktla5cw    Hoy

EXHIBIT B

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT 2 4 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN BROCKOVICH, | CASE NO.   CV 06-4501 DOC (MLGx) |
| Plaintiff(s), | |
| v. | **O R D E R** GRANTING DEFENDANTS' MOTION TO DISMISS |
| HCA, INC.; PARTHENON INSURANCE COMPANY, LIMITED; HEALTH MIDWEST INSURANCE COMPANY, LIMITED; HEALTH CARE INDEMNITY, INC.; and DOES 1 through 250, inclusive, | THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |
| Defendant(s). | |

ENTERED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT 2 5 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

Before the Court is Defendants HCA, Inc., Parthenon Insurance Company, Limited, Health Midwest Insurance Company, Limited, Health Care Indemnity, Inc.'s Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion"). Defendants allege that Plaintiff lacks constitutional standing. After considering the moving, opposing and replying papers, as well as oral arguments by the parties,[1] the Court finds that Plaintiff lacks

---

[1] At the October 18, 2006 hearing, the Court heard oral arguments in the following five related cases filed by the Plaintiff: SA CV 06-0546, SA CV 06-0547, SA CV 06-4501, SA CV 06-04134, and SA CV 06-4423 regarding the Defendants' motions to dismiss. Because the

31

# EXHIBIT B

1 | constitutional standing and hereby GRANTS Defendants' Motion under Federal Rule of Civil

2 | Procedure 12(b)(1).

3 | **I.     BACKGROUND**

4 |         Plaintiff Erin Brockovich is a California resident suing Defendants on behalf of the

5 | United States to recoup conditional Medicare payments. Defendant HCA, Inc. is a Delaware

6 | corporation that holds stock in subsidiary companies that own hospitals and health care providers

7 | participating in the Medicare program. Defendants Parthenon Insurance Co., Health Midwest

8 | Insurance Co., and Health Care Indemnity, Inc., are wholly-owned by HCA's subsidiaries and

9 | provide professional liability insurance to HCA's subsidiary health care providers.

10 |        Medicare is a government program that provides health insurance benefits for persons

11 | above 65 years of age, for persons who are disabled, and for persons with end-stage renal

12 | disease. 42 U.S.C. § 1395c (2006). In response to the rising costs of Medicare, Congress

13 | enacted the Medicare Secondary Payer Act ("MSP"). The MSP designates certain private

14 | insurers as "primary payers" and Medicare as a "secondary payer" obligated to pay only for

15 | medical services not covered by a beneficiary's private insurance plan. In situations where the

16 | primary payer is unable to make payment in a timely manner, Medicare will issue conditional

17 | payments with the expectation that it will be reimbursed after determining that the primary payer

18 | was liable for the cost. If a primary payer fails to pay or reimburse Medicare, the MSP provides

19 | two causes of action. It allows the government to bring an action for double damages against a

20 | primary plan and also authorizes private causes of action for Medicare recipients to assist in

21 | enforcing the MSP. 42 U.S.C. § 1395y(b).

22 |         Plaintiff alleges that Defendants violated the MSP by injuring Medicare beneficiaries and

23 | improperly billing Medicare for the costs associated with the treatment of those injuries.

24 | According to Plaintiff, Defendants abused and neglected their Medicare patients, prompting its

25 | obligation to pay or reimburse Medicare for treatment of injuries that resulted from Defendants'

26 | tortious conduct. Plaintiff brings this action on behalf of the United States for damages and to

27 |

28 | Defendants raise similar arguments, the Court addresses Defendants' arguments collectively.

1   recover conditional payments. She does not allege that she is a Medicare recipient nor does she

2   claim she was injured by Defendants' conduct. Plaintiff has not asserted that she is over 65

3   years of age, disabled, or suffering from end-stage renal disease; nor has she alleged that she is

4   eligible to receive Medicare benefits.

5   **II.   DISCUSSION**

6       Defendants allege that Plaintiff lacks constitutional standing to bring this action because

7   she does not claim to have suffered any personal harm resulting from their conduct. Article III,

8   section 2 of the U.S. Constitution limits federal court jurisdiction to the resolution of "cases" and

9   "controversies." Courts use the doctrine of constitutional standing to determine whether a suit

10  involves a case or controversy. *E.g., DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854 (2006);

11  *Lujan v. Defenders of Wildlife*, 405 U.S. 555, 560, 112 S. Ct. 2130 (1992). Constitutional

12  standing is an "essential and unchanging part of the case or controversy requirement of Article

13  III." *Lujan*, 504 U.S. at 560. It entitles a litigant to have his grievance resolved in federal court

14  and reinforces the separation of powers between the three political branches. *Id.* at 559-60; *Vt.*

15  *Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858

16  (2000).

17      In order to have standing a plaintiff must satisfy three "irreducible constitutional

18  minimum" requirements.

19          First, the plaintiff must have suffered an "injury in fact" – an

20  invasion of a legally protected interest which is (a) concrete and
        particularized, and (b) "actual or imminent, not 'conjectural' or
        hypothetical.'" Second, there must be a causal connection between

21  the injury and the conduct complained of – the injury has to be
        "fairly . . . trace[able] to the challenged action of the defendant, and

22  not . . . the result [of] the independent action of some third party not
        before the court." Third, it must be "likely," as opposed to merely

23  "speculative," that the injury will be "redressed by a favorable
        decision."

24  *Lujan*, 504 U.S. at 560-61 (citations omitted).

25      Plaintiff asserts that the MSP is a *qui tam* statute, and thus she has constitutional standing

26  to bring this action based on the injury to the government. *Qui tam* actions are generally only

27  permitted by statutes explicitly providing a cause of action for private parties to sue on behalf of

28

3

1   the government. *See Stevens*, 529 U.S. at 776 (reviewing *qui tam* statutes enacted by the First

2   Congress); *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197 (1975) (noting that

3   person who seeks relief based on third party's legal rights may have standing if Congress has

4   expressly granted a right of action). "There is no common law right to maintain a *qui tam*

5   action; authority must always be found in legislation." *Conn. Action Now, Inc. v. Roberts*

6   *Plating Co., Inc.*, 457 F.2d 81, 84 (2d Cir. 1972) (citing *United States ex rel. Marcus v. Hess*,

7   317 U.S. 537, 63 S. Ct. 379 (1942)); *see also Stevens*, 529 U.S. at 776 (finding no evidence of

8   common-law *qui tam* suits after reviewing history of *qui tam* actions). Although a statute may

9   grant an express right of action to sue on behalf of the government, *qui tam* plaintiffs must still

10  satisfy Article III standing. *Warth*, 422 U.S. at 501. Even though a *qui tam* plaintiff is not

11  actually injured by a defendant's conduct, *qui tam* plaintiffs can satisfy the constitutional

12  standing requirements through a "partial assignment of the Government's claim." *Stevens*, 529

13  U.S. at 773-74, 778 (concluding that government's injury in fact suffices to confer standing on

14  *qui tam* plaintiffs under False Claims Act); *see also United States ex rel. Kelly v. Boeing Co.*, 9

15  F.3d 743, 748 (9th Cir. 1993) (holding that *qui tam* plaintiff has standing to sue based on injury

16  to federal treasury under the False Claims Act).

17          Plaintiff and Defendants agree that the most notable *qui tam* statute is the False Claims

18  Act ("FCA"). The FCA gives private parties a right to sue on behalf of the government against

19  any person who presents a fraudulent claim for payment to the United States. *See* 31 U.S.C.

20  § 3730. It expressly states that "[a] person may bring a civil action . . . for the person *and for the*

21  *United States Government*." 31 U.S.C. § 3730(b) (emphasis added).

22          Unlike the FCA, the MSP does not expressly authorize a private person to sue on behalf

23  of the government. Rather, it provides two distinct causes of action for violation of the statute.

24  The first one provides a right of action by the United States to recover payments from primary

25  payers. *See* 42 U.S.C. § 1395y(b)(20(B)(iii). It specifically states that "the United States may

26  bring an action against any or all entities that are or were required or responsible to make

27  payment . . . under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii). In a separate subsection,

28  the MSP provides a cause of action for private parties where the primary plan fails to pay for

4

services or reimburse the government. 42 U.S.C. § 1395y(b)(3). No language under the plain reading of the statute permits a private party to sue on behalf of the government. Therefore, Plaintiff lacks constitutional standing to bring this action.

In addition, there is no evidence to suggest that Congress intended for the MSP to be a *qui tam* statute. The MSP was amended to include a private cause of action during the same month and year that the FCA was amended to include the *qui tam* provision. *See* Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986); False Claims Amendments Act of 1986, Pub. L. No. 99-562, 100 Stat. 3153 (1986). The MSP's private cause of action provision was approved ten days after the FCA amendments. *See* 1986 U.S.C.C.A.N. 3868, 5266 (1986). "Obviously, then, when Congress wished to provide a [*qui tam* remedy], it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S. Ct. 2479 (1979); *see also TransAmerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20-21, 100 S. Ct. 242 (1979) (holding that express private damages remedy contained in one statute and not in a related statute "strongly suggests" against inferring a private cause of action). Thus, recognizing the MSP as a *qui tam* statute would be contrary to Congress's apparent intent since it enacted the MSP contemporaneously with the FCA.

Moreover, Congress, in enacting the *qui tam* provisions in the FCA, ensured that the executive branch had sufficient control of the *qui tam* actions in accord with the Take Care Clause of Article II, which requires the executive branch to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The Ninth Circuit has held that the *qui tam* provisions do not interfere with the executive branch's authority to enforce the laws. *See Kelly*, 9 F.3d at 752. The FCA provides procedural safeguards that afford the government some control in *qui tam* suits initiated by private parties. Specifically, the FCA requires that *qui tam* plaintiffs provide the government a copy of the complaint and other material information, allows the government to intervene and take over the action, to move for dismissal, and to request a judicial stay if a *qui tam* plaintiff's suit interfered with government investigations. 31 U.S.C. § 3730(c). In contrast, the MSP provides no such procedural safeguards. The MSP only provides for a government cause of action and a private cause of action; two separate causes of action.

1  These two provisions cannot be conflated to read the MSP as a *qui tam* statute. Therefore,

2  Plaintiff has no standing to bring this action on behalf of the United States.

3  　　　　Defendants, at oral argument, also requested that this Court determine whether Plaintiff

4  has satisfied prudential standing requirements and whether Plaintiff's complaint states a claim

5  upon which relief can be granted. Because Plaintiff lacks constitutional standing to bring suit

6  under the MSP, the Court declines to address Defendants' additional arguments.

7  **III.   DISPOSITION**

8  　　　　For the reasons set forth above, the Court hereby GRANTS Defendants' Motion to

9  Dismiss. Because these deficiencies in the Complaint could not possibly be cured by

10  amendment, *see Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996), the Court DISMISSES

11  WITH PREJUDICE Plaintiff's Complaint.

12

13  IT IS SO ORDERED.

14  DATED: October 24, 2006

15

16  　　　　　　　　　　　　　　　　　　*David O. Carter*

17  　　　　　　　　　　　　　　　　DAVID O. CARTER
　　　　　　　　　　　　　　　　United States District Judge

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ERIN BROCKOVICH, on behalf of
the United States of America,

                             Plaintiff,

      v.

SHARP HEALTHCARE, a California
corporation; and DOES 1 through 250,

                         Defendants.

CASE NO: 06-CV-1628 W (NLS)

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS**

On June 13, 2006, Plaintiff Erin Brockovich commenced this action on behalf of the United States against Defendant Sharp Healthcare and Does 1–250 in the San Diego County Superior Court.  On August 14, 2006, Defendant filed a notice of removal to this court under 28 U.S.C. § 1441.  Plaintiff claims damages under the Medicare Secondary Payer Act (MSP), 42 U.S.C. § 1395(y)(b).  Defendant moves to dismiss.  The Court decides the matter on the papers submitted without oral argument.  See Civil Local Rule 7.1(d.1).  The Court **GRANTS** Defendant's motion to dismiss.

06cv1628

EXHIBIT C

## I.   BACKGROUND

Plaintiff seeks to recover conditional payments Medicare made to Defendant, a regional health care delivery network that operates acute care hospitals and other health care facilities. Plaintiff alleges that on numerous occasions Defendant, by and through its employees and agents, caused harm to Medicare recipients who were patients in Defendant's hospitals. (Compl. ¶ 6.) According to Plaintiff, as a health care provider participating in Medicare and carrying its own risk, Defendant must reimburse Medicare for any medical service, treatment, or medication necessary to treat injuries it caused. In other words, if Medicare advanced a conditional payment to treat a Medicare beneficiary, the MSP obligates Defendant to reimburse Medicare for these payments as a "primary payer." (Id. at ¶ 7.)

In response, Defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## II.   LEGAL STANDARD

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction affects the court's power to hear a case, parties cannot waive it, and the court must dismiss an action if it lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); Csibi v. Fustos, 670 F.2d 134, 136 n.3 (9th Cir. 1982).

By contrast, a motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See N. Star Int'l. v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss, the court assumes the truth of all factual allegations and construes them in the light most favorable to the plaintiff. Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002). The court may dismiss, however, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).

06cv1628

1    Because Plaintiff claims under the complex MSP statute, the Court will first
2    outline how it operates. Medicare, first enacted in 1965, provides health insurance to
3    eligible aged and disabled persons, and for persons with end-stage renal disease. 42
4    U.S.C. § 1395c; Kaiser v. Blue Cross, 347 F.3d 1107, 1109 (9th Cir. 2003).
5    "Responding to skyrocketing Medicare costs, Congress in 1980 enacted the Medicare
6    Secondary Payer legislation . . . requiring Medicare to serve as the secondary payer when
7    a beneficiary has overlapping insurance coverage." Zinman v. Shalala, 67 F.3d 841, 843
8    (9th Cir. 1995).

9    Under the MSP, a Medicare payment "may not be made . . . with respect to any
10   item or service to the extent that payment has been made or can reasonably be expected
11   to be made" under a primary plan. 42 U.S.C. § 1395y(b)(2)(A). A primary plan is "a
12   group health plan or large group health plan . . . and a workmen's compensation law or
13   plan, an automobile or liability insurance policy or plan (including a self-insured plan)
14   or no fault insurance. An entity that engages in a business, trade, or profession shall be
15   deemed to have a self-insured plan if it carries its own risk (whether by a failure to
16   obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2)(A)(ii).

17   As relevant here, the MSP permits conditional payments "with respect to an item
18   or service if a primary plan described in subparagraph (A)(ii) has not made or cannot
19   reasonably be expected to make payment with respect to such item or service promptly."
20   42 U.S.C. § 1395y(b)(2)(B)(i). A primary plan, or any entity that receives payment
21   from a primary plan, is responsible for reimbursing Medicare "for any payment made .
22   . . with respect to an item or service if it is demonstrated that such primary plan has or
23   had a responsibility to make payment with respect to such item or service." 42 U.S.C.
24   § 1395y(b)(2)(B)(ii).

25   The United States may enforce the reimbursement obligations in two ways: one,
26   through a direct action against the primary plan; or two, through a statutory subrogation
27   action in the shoes of the provider who received the conditional payment. 42 U.S.C.
28   § 1395y(b)(2)(B)(iii)–(iv). In 1986, Congress established "a private right of action for

06cv1628

1    damages (which shall be in an amount double the amount otherwise provided) in the

2    case of a primary plan which fails to provide for primary payment (or appropriate

3    reimbursement)." 42 U.S.C. § 1395y(b)(3)(A). Plaintiff has filed suit to enforce the

4    reimbursement obligation under this statute. Defendant claims she has no standing, or

5    even if she has standing, she has not alleged facts sufficient to trigger the reimbursement

6    obligation.

7

8    III.    DISCUSSION

9        A.   PLAINTIFF LACKS STANDING TO ASSERT HER CLAIM

10        Defendant argues that Plaintiff lacks standing to bring this action because she

11    does not allege any injury in fact. (Mot. to Dismiss at 7.) Plaintiff does not allege she

12    was injured by Defendants' conduct, that she ever received treatment at any Sharp

13    hospital, or even that she is a Medicare beneficiary or Medicare eligible. Plaintiff

14    responds that the MSP statute is a *qui tam* statute which does not require injury to the

15    plaintiff. (Pl.'s Mem. in Opp. to Mot. to Dismiss [Pl.'s Opp.] at 6.) The Court holds

16    that Plaintiff lacks Article III standing.

17          1.    Article III Requires Injury-in-Fact

18        The Supreme Court has frequently explained that standing is an essential and

19    unchanging part of Article III's case-or-controversy requirement for federal jurisdiction.

20    Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000).

21    Thus, if Plaintiff lacks standing, the court must dismiss her claim for lack of subject

22    matter jurisdiction. Cetacean Community v. Bush, 386 F.3d 1169, 1175 (9th Cir.

23    2004). To show Article III standing, Plaintiff must demonstrate (1) injury in fact; (2)

24    a traceable connection between the alleged injury in fact and the alleged conduct of

25    defendant; and (3) redressability of the alleged injury. Vermont, 529 U.S. at 771.

26    Plaintiff never alleges injury to herself, nor do her allegations permit the inference that

27    she has suffered any injury. Thus, she lacks standing under Article III.

28          2.    The MSP Legislation Is Not a *Qui Tam* Statute

06cv1628

1    Plaintiff does, however, claim injury to the Medicare Trust Fund. She argues that
2  because the United States has suffered injury-in-fact, she may sue to redress that injury
3  through the MSP statute because it is a *qui tam* statute. The Court disagrees.

4    A *qui tam*[1] action is "an action under a statute that allows a private person to sue
5  for a penalty, part of which the government or some specified public institution will
6  receive." United States v. Kitsap Physicians Serv., 314 F.3d 995, 997 n.1 (9th Cir.
7  2002) (quoting Garner, Dictionary of Modern Legal Usage at 728 (2d ed. 1995). A
8  private person (called the relator) may bring a *qui tam* civil action in their own name as
9  well as on behalf of the United States. Vermont, 529 U.S. at 768. "*Qui tam* plaintiffs
10  are merely agents suing on behalf of the government, which is always the real party in
11  interest." Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 768 (9th Cir. 1997).

12    Still, Article III standing requirements apply to *qui tam* suits. The complaining
13  party must assert an injury-in-fact even when bringing a claim on behalf of the United
14  States. The relator has standing under Article III because courts have long recognized
15  that "the assignee of a claim has standing to assert the injury in fact suffered by the
16  assignor." Vermont, 529 U.S. at 773. *Qui tam* statutes, such as the False Claims Act,
17  "can reasonably be regarded as effecting a partial assignment of the Government's
18  damages claim." Id.

19    But "[t]here is no common law right to maintain a qui tam action; authority must
20  always be found in legislation." Conn. Action Now, Inc. v. Roberts Plating Co., 457
21  F.2d 81, 84 (2d. Cir. 1972). The fatal defect in Plaintiff's argument lies here, because
22  the MSP does not create a cause of action for private parties on behalf of the United
23  States. As stated above, the MSP provides two distinct causes of action. The first cause
24  of action allows the United States to "bring an action against any or all entities that are
25  or were required or responsible to make payment . . . under a primary plan." See 42

26

---

27    [1] *Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte*
28  *sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his
own." Vermont, 529 U.S. at 768 n1.

1  U.S.C. § 1395y(b)(2)(B)(iii). The second, in a separate subsection of the statute, allows

2  private parties to bring an action if the primary plan fails to pay for services or reimburse

3  the government. 42 U.S.C. § 1395y(b)(3). By contrast, the False Claims Act expressly

4  states that "[a] person may bring a civil action . . . *for the person and for the United States*

5  *Government.*" 31 U.S.C. § 3730(b) (emphasis added). Consequently, the Court does

6  not regard either cause of action as "effecting a partial assignment of the government's

7  claim" to any private individual with knowledge of the harm. Therefore, the MSP is not

8  a *qui tam* statute and Plaintiff lacks standing to assert this claim.

9      Further, the MSP statute lacks typical characteristics of a *qui tam* statute. First,

10  the MSP does not provide a relator's bounty calculated as a *portion* or *percentage* of the

11  United States' recovery, whereas the False Claims Act awards the relator between 15

12  and 30 percent of the United States' recovery. 31 U.S.C. § 3730(d)(1)–(2). Older

13  "informer" statutes also structured the informer's bounty as a share of the government's

14  recovery.[2] Even Plaintiff's own cited examples provide the informer with a *portion* of the

15  recovery.[3] Second, the MSP does not automatically allocate any of the recovery to the

16

17      [2] See Act of Mar. 1, 1790, ch. 2 § 3 Stat. 102 (allowing informer to sue for, and *receive half of*

18  *fine* for, failure to file census return); Act of July 20, 1790, ch. 29, § § 1, 4, 1 Stat. 131, 133 (allowing
    private individual to sue for, and receive half of fine for, carriage of seamen without contract or illegal

19  harboring of runaway seamen); Act of July 22, 1790, ch. 33, § 3, 1 Stat. 137-138 (allowing private
    individual to sue for, and receive *half of good forfeited* for, unlicensed trading with Indian tribes); Act

20  of Mar. 3, 1791, ch. 15, § 44, 1 Stat. 209 (allowing person who discovers violation of spirits duties, or
    officer who seizes contraband spirits, to sue for and receive *half of penalty* and forfeiture, along with

21  costs, in action of debt); cf. Act of Apr. 30, 1790, ch. 9, §§ 16, 17, 1 Stat. 116 (allowing informer to

22  conduct prosecution, and receive *half of fine*, for criminal larceny or receipt of stolen goods). Vermont,

23  529 U.S. at 777 n.6 (emphasis added).

24      [3] 18 U.S.C. § 962 grants the informer *one half* of forfeiture the informant helped secure. 46

25  App. U.S.C. § 723 states that "all forfeitures incurred by virtue of this section shall remain, one moiety
    to the informer and *the other to the United States.*" 35 U.S.C. § 292 provides that "[a]ny person may

26  sue for the penalty, in which event *one-half* shall go to the person suing and the other to the use of the

27  United States." The Endangered Species Act Plaintiff cites is irrelevant. It provides that a person may
    commence a civil suit *in his or her own behalf* for injunctive relief against a person alleged to be in

28  violation of the Act or against the Secretary of the Interior to compel enforcement of the Act. 16
                                                                                                06cv1628

1    United States. In fact, the plaintiff is entitled to statutory damages equivalent to *double*

2    the amount otherwise recoverable. 42 U.S.C. § 1395y(b)(3)(A). To receive any

3    portion of a plaintiff's recovery under the private cause of action, the United States must

4    bring a subsequent suit against the plaintiff.

5        Third, Congress added a private cause of action to the MSP during the very same

6    month and year it added a true *qui tam* provision to the FCA. Compare Omnibus

7    Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986),

8    with False Claims Amendments Act of 1986, Pub. L. No. 99-562, 100 Stat. 3153 (1986).

9    Congress approved the MSP's private cause of action provision ten days after the FCA

10   amendments. See 1986 U.S.C.C.A.N. 3868, 5266 (1986). Thus, the Court declines to

11   find an implied *qui tam* cause of action in the MSP from vague language when

12   contemporaneous evidence shows Congress knew how to create an express and

13   unequivocal *qui tam* provision when it intended to.

14       Last, but most important, the United States is not the real party in interest in a

15   suit brought under the MSP's private cause of action. Unlike typical *qui tam* statutes,

16   the MSP does not require the plaintiff to follow procedural safeguards found in modern

17   *qui tam* statutes to ensure the government remains fully apprised of the litigation, has

18   the opportunity to participate, and retains the power to make key decisions over the

19   relator's objections.[4]  See United States v. Schimmels, 127 F.3d 875, 882 (9th Cir.

20

21   U.S.C. § 1540(g)(1).

22       [4] For example, the FCA protects the United States' interest in the following ways: (1) the

23   relator must serve the complaint and written disclosure of material evidence of the Government before
     the complaint is served on the defendant; (2) the relator must file the complaint in camera and remain

24   under seal while the Government conducts an investigation, and must not serve defendant except by

25   court order; (3) the Government must either intervene and take over the conduct of the action before
     the defendant is served or notify the court that the private person will be conducting the action; (4)

26   if the Government proceeds with the action, it has primary responsibility for prosecuting the action,

27   and is not bound by the acts of the relator; (5) the Government may dismiss or settle the action over
     the objection of the relator; (6) the Government must provide written consent before the case is

28   dismissed; (7) the Government is protected from liability for litigation expenses of the *qui tam* relator;

1    1997) ("[I]n a *qui tam* action, the government is the 'real party in interest.'").
2    Accordingly, Plaintiff lacks standing to bring this suit because she has not alleged an
3    injury-in-fact to herself, and the MSP does not confer standing to her by a partial
4    assignment of the government's claim. Therefore, the Court dismisses the complaint for
5    lack of subject matter jurisdiction.

6

7         **B.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE MSP**

8         Congress created a private cause of action under the MSP for double damages "in
9    the case of a primary plan which fails to provide for primary payment" when Medicare
10   reasonably expected such payment to be made, or fails to reimburse Medicare for a
11   conditional payment if it is "*demonstrated* that such primary plan has or had a
12   responsibility to make payment with respect to such item or service." 42 U.S.C. §
13   1395y(b)(3); 42 U.S.C. § 1395y(b)(1)(B)(ii) (emphasis added). "A primary plan's
14   responsibility for such payment may be demonstrated by a judgment, a payment
15   conditioned upon recipient's compromise, waiver, or release (whether or not there is a
16   determination or admission of liability) of plan's insured, or by other means." Id.

17        Plaintiff does not allege a judgment or settlement demonstrates Defendant's
18   liability for any payments made by Medicare. Instead, Plaintiff alleges that responsibility
19   to pay may be demonstrated "by other means." (Pl.'s Opp. at 20.) Plaintiff alleges that
20   Defendant had contractual and quasi-contractual obligations to Medicare to pay (rather
21   than bill Medicare) for medical services or items resulting from its own misconduct.
22   (Pl.'s Opp. at 14.)   She argues that Defendant's own internal incident reports,
23   investigations, internal peer reviews, and risk management programs "demonstrate" its
24   responsibility to pay. (Id.) In her view, these documents, together with the governing
25   laws and regulations, constitute sufficient evidence of   Defendant's primary
26   responsibility to pay for the resulting medical costs.

27

28   ――――――――――――
     and (8) the Government receives at least 70% of any recovery. 31 U.S.C. § 3730(b)–(f).

                                                                                06cv1628

1   Applying accepted cannons of statutory construction, the Court holds that the
2   phrase "by other means" does not include what amount to nonspecific allegations of
3   misconduct. Under the established interpretive canon of *ejusdem generis*, "where general
4   words follow specific words in a statutory enumeration, the general words are construed
5   to embrace only objects similar in nature to those objects enumerated by the preceding
6   specific words." <u>Wash. State Dep't. of Soc. & Health Servs. v. Guardianship Estate of</u>
7   <u>Keffeler</u>, 537 U.S.371, 384 (2003). Thus, in § 1395y(b)(2)(B)(ii), the two specific
8   means by which a primary plan's liability may be demonstrated limit the scope of "by
9   other means."

10   Congress enumerated two ways to demonstrate responsibility to pay: a judgment
11   and "a payment conditioned upon the recipients's compromise, waiver, or release," i.e.,
12   a settlement. In both of these situations, the primary plan's obligation to pay is
13   established, whether by adjudication or agreement of the primary plan, *before* the MSP
14   action is filed, and with respect to *particular* expenses. Therefore, "by other means"
15   includes other instances of like kind where there is a *previously established* requirement
16   or agreement to pay for *specific* medical expenses Medicare conditionally paid for.

17   Plaintiff's attempt to demonstrate liability through discovery lacks sufficient
18   commonality with either a judgment or settlement. Plaintiff alleges a novel theory of
19   liability, however, she cannot substantiate it until she obtains the documents she
20   believes will show the acts and omissions giving rise to Defendant's duty to reimburse
21   Medicare. But Plaintiff has not alleged anything suggesting Defendant has a primary
22   responsibility to pay—whether in contract, quasi-contract, or tort—for expenses
23   because she has supplied no dates, no procedures, and no names of beneficiaries. To
24   state a claim under the MSP, Plaintiff must provide more than speculative allegations
25   that she can substantiate once she obtains Defendant's files.

26   //

27   Plaintiff argues that the MSP requires only a demonstrated responsibility to pay,
28   not "tort liability." (Pl.'s Opp. at 16.) Nothing in the Court's ruling requires an MSP

06cv1628

1   claimant to demonstrate responsibility to pay under any particular theory of liability.
2   Rather, the MSP requires that the evidence demonstrating responsibility to pay exist
3   *before* a claimant files an MSP action, and be *specific and identifiable*, because those are
4   the common, limiting features of the means Congress enumerated.

5        Furthermore, allowing the issue of liability to be litigated in federal court would
6   drastically expand federal court jurisdiction, by allowing Plaintiff to begin a fishing
7   expedition to find the documents she alleges must exist. Cf. Glover v. Liggett Group,
8   Inc., 459 F.3d 1304, 1309 (11th Cir. 2006) (finding that tort liability must be
9   demonstrated before an MSP private cause of action for failure to reimburse Medicare
10  can proceed). The Court declines to interpret three generic words in a complex
11  statutory scheme—"by other means"—to authorize such an expansion of federal
12  jurisdiction. Instead, the Court limits its interpretation to "demonstrated" means. At
13  this stage of the litigation, an MSP cause of action requires more than a strong "hunch"
14  that the defendant has files that might demonstrate its responsibility to pay. Because
15  Plaintiff failed to state a cause of action, the Court must dismiss the complaint.
16
17  **IV.   CONCLUSION**
18       The Court hereby **DISMISSES THE COMPLAINT WITH PREJUDICE**
19  because Plaintiff lacks standing to assert the claim, or in the alternative, because she
20  fails to state a claim upon which relief can be granted.
21
22       **IT IS SO ORDERED.**
23
24
25  DATED: November 7, 2006
26
27                            Hon. Thomas J. Whelan
28                            United States District Judge

06cv1628

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

06cv1628

EXHIBIT D

1
2
3
4
5
6
7
8
9
10         UNITED STATES DISTRICT COURT
11         SOUTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  ERIN BROCKOVICH, on behalf of<br>14  the United States of America, | CASE NO: 06-CV-1569-W (NLS) |
| 15                              Plaintiff, | **ORDER GRANTING** |
| 16    v. | **DEFENDANT'S MOTION TO**<br>**DISMISS** |
| 17 | |
| 18  SCRIPPS HEALTH, a California<br>     corporation; and DOES 1 through 250, | |
| 19 | |
| 20 | |
|                              Defendants. | |

21

22         On June 13, 2006, Plaintiff Erin Brockovich commenced this action on behalf of

23 the United States against Defendant Scripps Health and Does 1–250 in the San Diego

24 County Superior Court. On August 8, 2006, Defendant filed a notice of removal to this

25 court under 28 U.S.C. § 1441. Plaintiff claims damages under the Medicare Secondary

26 Payer Act (MSP), 42 U.S.C. § 1395(y)(b). Defendant moves to dismiss. The Court

27 decides the matter on the papers submitted and without oral argument. See Civil Local

28 Rule 7.1(d.1). The Court **GRANTS** Defendant's motion to dismiss.

**EXHIBIT D**

## I.  BACKGROUND

Plaintiff seeks to recover conditional payments Medicare made to Defendant, a regional health care delivery network that operates acute care hospitals and other health care facilities.  Plaintiff alleges that on numerous occasions Defendant, by and through its employees and agents, caused harm to Medicare recipients who were patients in Defendant's hospitals.  (Compl. ¶ 6.)  According to Plaintiff, as a health care provider participating in Medicare and carrying its own risk, Defendant must reimburse Medicare for any medical service, treatment, or medication necessary to treat injuries it caused.  In other words, if Medicare advanced a conditional payment to treat a Medicare beneficiary, the MSP obligates Defendant to reimburse Medicare for these payments as a "primary payer." (Id. at ¶ 7.)

In response, Defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## II.  LEGAL STANDARD

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  Because subject matter jurisdiction affects the court's power to hear a case, parties cannot waive it, and the court must dismiss an action if it lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); Csibi v. Fustos, 670 F.2d 134, 136 n.3 (9th Cir. 1982).

By contrast, a motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See N. Star Int'l. v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  In ruling on a motion to dismiss, the court assumes the truth of all factual allegations and construes them in the light most favorable to the plaintiff. Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002).  The court may dismiss, however, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).

06cv1569

1  Because Plaintiff claims under the complex MSP statute, the Court will first

2 outline how it operates. Medicare, first enacted in 1965, provides health insurance to

3 eligible aged and disabled persons, and for persons with end-stage renal disease. 42

4 U.S.C. § 1395c; Kaiser v. Blue Cross, 347 F.3d 1107, 1109 (9th Cir. 2003).

5 "Responding to skyrocketing Medicare costs, Congress in 1980 enacted the Medicare

6 Secondary Payer legislation . . . requiring Medicare to serve as the secondary payer when

7 a beneficiary has overlapping insurance coverage." Zinman v. Shalala, 67 F.3d 841, 843

8 (9th Cir. 1995).

9  Under the MSP, a Medicare payment "may not be made . . . with respect to any

10 item or service to the extent that payment has been made or can reasonably be expected

11 to be made" under a primary plan. 42 U.S.C. § 1395y(b)(2)(A). A primary plan is "a

12 group health plan or large group health plan . . . and a workmen's compensation law or

13 plan, an automobile or liability insurance policy or plan (including a self-insured plan)

14 or no fault insurance. An entity that engages in a business, trade, or profession shall be

15 deemed to have a self-insured plan if it carries its own risk (whether by a failure to

16 obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2)(A)(ii).

17  As relevant here, the MSP permits conditional payments "with respect to an item

18 or service if a primary plan described in subparagraph (A)(ii) has not made or cannot

19 reasonably be expected to make payment with respect to such item or service promptly."

20 42 U.S.C. § 1395y(b)(2)(B)(i). A primary plan, or any entity that receives payment

21 from a primary plan, is responsible for reimbursing Medicare "for any payment made .

22 . . with respect to an item or service if it is demonstrated that such primary plan has or

23 had a responsibility to make payment with respect to such item or service." 42 U.S.C.

24 § 1395y(b)(2)(B)(ii).

25  The United States may enforce the reimbursement obligations in two ways: one,

26 through a direct action against the primary plan; or two, through a statutory subrogation

27 action in the shoes of the provider who received the conditional payment. 42 U.S.C.

28 § 1395y(b)(2)(B)(iii)–(iv). In 1986, Congress established "a private right of action for

06cv1569

- 3 -

1  damages (which shall be in an amount double the amount otherwise provided) in the
2  case of a primary plan which fails to provide for primary payment (or appropriate
3  reimbursement)." 42 U.S.C. § 1395y(b)(3)(A). Plaintiff has filed suit to enforce the
4  reimbursement obligation under this statute. Defendant claims she has no standing, or
5  even if she has standing, she has not alleged facts sufficient to trigger the reimbursement
6  obligation.

7

8  **III.  DISCUSSION**

9       **A.  PLAINTIFF LACKS STANDING TO ASSERT HER CLAIM**

10       Defendant argues that Plaintiff lacks standing to bring this action because she
11  does not allege any injury in fact. (Mot. to Dismiss at 7.) Plaintiff does not allege she
12  was injured by Defendants' conduct, that she ever received treatment at any Scripps
13  hospital, or even that she is a Medicare beneficiary or Medicare eligible. Plaintiff
14  responds that the MSP statute is a *qui tam* statute which does not require injury to the
15  plaintiff. (Pl.'s Mem. in Opp. to Mot. to Dismiss [Pl.'s Opp.] at 6.) The Court holds
16  that Plaintiff lacks Article III standing.

17       **1.  Article III Requires Injury-in-Fact**

18       The Supreme Court has frequently explained that standing is an essential and
19  unchanging part of Article III's case-or-controversy requirement for federal jurisdiction.
20  Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000).
21  Thus, if Plaintiff lacks standing, the court must dismiss her claim for lack of subject
22  matter jurisdiction. Cetacean Community v. Bush, 386 F.3d 1169, 1175 (9th Cir.
23  2004). To show Article III standing, Plaintiff must demonstrate (1) injury in fact; (2)
24  a traceable connection between the alleged injury in fact and the alleged conduct of
25  defendant; and (3) redressability of the alleged injury. Vermont, 529 U.S. at 771.
26  Plaintiff never alleges injury to herself, nor do her allegations permit the inference that
27  she has suffered any injury. Thus, she lacks standing under Article III.

28       **2.  The MSP Legislation Is Not a *Qui Tam* Statute**

06cv1569

- 4 -

1      Plaintiff does, however, claim injury to the Medicare Trust Fund.  She argues that

2  because the United States has suffered injury-in-fact, she may sue to redress that injury

3  through the MSP statute because it is a *qui tam* statute.  The Court disagrees.

4      A *qui tam*[1] action is "an action under a statute that allows a private person to sue

5  for a penalty, part of which the government or some specified public institution will

6  receive."  United States v. Kitsap Physicians Serv., 314 F.3d 995, 997 n.1 (9th Cir.

7  2002) (quoting Garner, Dictionary of Modern Legal Usage at 728 (2d ed. 1995).  A

8  private person (called the relator) may bring a *qui tam* civil action in their own name as

9  well as on behalf of the United States.  Vermont, 529 U.S. at 768.  "*Qui tam* plaintiffs

10  are merely agents suing on behalf of the government, which is always the real party in

11  interest."  Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 768 (9th Cir. 1997).

12      Still, Article III standing requirements apply to *qui tam* suits.  The complaining

13  party must assert an injury-in-fact even when bringing a claim on behalf of the United

14  States.  The relator has standing under Article III because courts have long recognized

15  that "the assignee of a claim has standing to assert the injury in fact suffered by the

16  assignor."  Vermont, 529 U.S. at 773.  *Qui tam* statutes, such as the False Claims Act,

17  "can reasonably be regarded as effecting a partial assignment of the Government's

18  damages claim."  Id.

19      But "[t]here is no common law right to maintain a qui tam action; authority must

20  always be found in legislation."  Conn. Action Now, Inc. v. Roberts Plating Co., 457

21  F.2d 81, 84 (2d. Cir. 1972).  The fatal defect in Plaintiff's argument lies here, because

22  the MSP does not create a cause of action for private parties on behalf of the United

23  States.  As stated above, the MSP provides two distinct causes of action.  The first cause

24  of action allows the United States to "bring an action against any or all entities that are

25  or were required or responsible to make payment . . . under a primary plan."  See 42

26  

27      [1] *Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte*

28  *sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own."  Vermont, 529 U.S. at 768 n1.

1  U.S.C. § 1395y(b)(2)(B)(iii). The second, in a separate subsection of the statute, allows

2  private parties to bring an action if the primary plan fails to pay for services or reimburse

3  the government. 42 U.S.C. § 1395y(b)(3). By contrast, the False Claims Act expressly

4  states that "[a] person may bring a civil action . . . *for the person and for the United States*

5  *Government.*" 31 U.S.C. § 3730(b) (emphasis added). Consequently, the Court does

6  not regard either cause of action as "effecting a partial assignment of the government's

7  claim" to any private individual with knowledge of the harm. Therefore, the MSP is not

8  a *qui tam* statute and Plaintiff lacks standing to assert this claim.

9      Further, the MSP statute lacks typical characteristics of a *qui tam* statute. First,

10  the MSP does not provide a relator's bounty calculated as a *portion* or *percentage* of the

11  United States' recovery, whereas the False Claims Act awards the relator between 15

12  and 30 percent of the United States' recovery. 31 U.S.C. § 3730(d)(1)–(2). Older

13  "informer" statutes also structured the informer's bounty as a share of the government's

14  recovery.[2] Even Plaintiff's own cited examples provide the informer with a *portion* of the

15  recovery.[3] Second, the MSP does not automatically allocate any of the recovery to the

16

17     [2] See Act of Mar. 1, 1790, ch. 2 § 3 Stat. 102 (allowing informer to sue for, and *receive half of*

18  *fine* for, failure to file census return); Act of July 20, 1790, ch. 29, § § 1, 4, 1 Stat. 131, 133 (allowing
private individual to sue for, and receive half of fine for, carriage of seamen without contract or illegal

19  harboring of runaway seamen); Act of July 22, 1790, ch. 33, § 3, 1 Stat. 137-138 (allowing private
individual to sue for, and receive *half of good forfeited* for, unlicensed trading with Indian tribes); Act

20  of Mar. 3, 1791, ch. 15, § 44, 1 Stat. 209 (allowing person who discovers violation of spirits duties, or

21  officer who seizes contraband spirits, to sue for and receive *half of penalty* and forfeiture, along with
costs, in action of debt); cf. Act of Apr. 30, 1790, ch. 9, §§ 16, 17, 1 Stat. 116 (allowing informer to

22  conduct prosecution, and receive *half of fine*, for criminal larceny or receipt of stolen goods). Vermont,

23  529 U.S. at 777 n.6 (emphasis added).

24     [3] 18 U.S.C. § 962 grants the informer *one half* of forfeiture the informant helped secure. 46

25  App. U.S.C. § 723 states that "all forfeitures incurred by virtue of this section shall accrue, one moiety

26  to the informer and *the other to the United States*." 35 U.S.C. § 292 provides that "[a]ny person may
sue for the penalty, in which event *one-half* shall go to the person suing and the other to the use of the

27  United States." The Endangered Species Act Plaintiff cites is irrelevant. It provides that a person may
commence a civil suit *in his or her own behalf* for injunctive relief against a person alleged to be in

28  violation of the Act or against the Secretary of the Interior to compel enforcement of the Act. 16

1  United States.  In fact, the plaintiff is entitled to statutory damages equivalent to *double*
2  the amount otherwise recoverable.  42 U.S.C. § 1395y(b)(3)(A).  To receive any
3  portion of a plaintiff's recovery under the private cause of action, the United States must
4  bring a subsequent suit against the plaintiff.

5  Third, Congress added a private cause of action to the MSP during the very same
6  month and year it added a true *qui tam* provision to the FCA.  Compare Omnibus
7  Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986),
8  with False Claims Amendments Act of 1986, Pub. L. No. 99-562, 100 Stat. 3153 (1986).
9  Congress approved the MSP's private cause of action provision ten days after the FCA
10  amendments.  See 1986 U.S.C.C.A.N. 3868, 5266 (1986).  Thus, the Court declines to
11  find an implied *qui tam* cause of action in the MSP from vague language when
12  contemporaneous evidence shows Congress knew how to create an express and
13  unequivocal *qui tam* provision when it intended to.

14  Last, but most important, the United States is not the real party in interest in a
15  suit brought under the MSP's private cause of action.  Unlike typical *qui tam* statutes,
16  the MSP does not require the plaintiff to follow procedural safeguards found in modern
17  *qui tam* statutes to ensure the government remains fully apprised of the litigation, has
18  the opportunity to participate, and retains the power to make key decisions over the
19  relator's objections.[4]  See United States v. Schimmels, 127 F.3d 875, 882 (9th Cir.

20

21  U.S.C. § 1540(g)(1).

22  [4] For example, the FCA protects the United States' interest in the following ways: (1) the
23  relator must serve the complaint and written disclosure of material evidence of the Government before
    the complaint is served on the defendant; (2) the relator must file the complaint in camera and remain
24  under seal while the Government conducts an investigation, and must not serve defendant except by
25  court order; (3) the Government must either intervene and take over the conduct of the action before
    the defendant is served or notify the court that the private person will be conducting the action; (4)
26  if the Government proceeds with the action, it has primary responsibility for prosecuting the action,
    and is not bound by the acts of the relator; (5) the Government may dismiss or settle the action over
27  the objection of the relator; (6) the Government must provide written consent before the case is
28  dismissed; (7) the Government is protected from liability for litigation expenses of the *qui tam* relator;

06cv1569

- 7 -

1  1997) ("[I]n a *qui tam* action, the government is the 'real party in interest.'").
2  Accordingly, Plaintiff lacks standing to bring this suit because she has not alleged an
3  injury-in-fact to herself, and the MSP does not confer standing to her by a partial
4  assignment of the government's claim. Therefore, the Court dismisses the complaint for
5  lack of subject matter jurisdiction.

6

7      **B.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE MSP**

8          Congress created a private cause of action under the MSP for double damages "in
9  the case of a primary plan which fails to provide for primary payment" when Medicare
10 reasonably expected such payment to be made, or fails to reimburse Medicare for a
11 conditional payment if it is "*demonstrated* that such primary plan has or had a
12 responsibility to make payment with respect to such item or service." 42 U.S.C. §
13 1395y(b)(3); 42 U.S.C. § 1395y(b)(1)(B)(ii) (emphasis added). "A primary plan's
14 responsibility for such payment may be demonstrated by a judgment, a payment
15 conditioned upon recipient's compromise, waiver, or release (whether or not there is a
16 determination or admission of liability) of plan's insured, or by other means." Id.

17         Plaintiff does not allege a judgment or settlement demonstrates Defendant's
18 liability for any payments made by Medicare. Instead, Plaintiff alleges that responsibility
19 to pay may be demonstrated "by other means." (Pl.'s Opp. at 20.) Plaintiff alleges that
20 Defendant had contractual and quasi-contractual obligations to Medicare to pay (rather
21 than bill Medicare) for medical services or items resulting from its own misconduct.
22 (Pl.'s Opp. at 14.) She argues that Defendant's own internal incident reports,
23 investigations, internal peer reviews, and risk management programs "demonstrate" its
24 responsibility to pay. (Id.) In her view, these documents, together with the governing
25 laws and regulations, constitute sufficient evidence of Defendant's primary
26 responsibility to pay for the resulting medical costs.

27

28 _____
and (8) the Government receives at least 70% of any recovery. 31 U.S.C. § 3730(b)–(f).

06cv1569

- 8 -

1        Applying accepted cannons of statutory construction, the Court holds that the

2  phrase "by other means" does not include what amount to nonspecific allegations of

3  misconduct. Under the established interpretive canon of *ejusdem generis*, "where general

4  words follow specific words in a statutory enumeration, the general words are construed

5  to embrace only objects similar in nature to those objects enumerated by the preceding

6  specific words." <u>Wash. State Dep't. of Soc. & Health Servs. v. Guardianship Estate of</u>

7  <u>Keffeler</u>, 537 U.S.371, 384 (2003). Thus, in § 1395y(b)(2)(B)(ii), the two specific

8  means by which a primary plan's liability may be demonstrated limit the scope of "by

9  other means."

10       Congress enumerated two ways to demonstrate responsibility to pay: a judgment

11  and "a payment conditioned upon the recipients's compromise, waiver, or release," i.e.,

12  a settlement. In both of these situations, the primary plan's obligation to pay is

13  established, whether by adjudication or agreement of the primary plan, *before* the MSP

14  action is filed, and with respect to *particular* expenses. Therefore, "by other means"

15  includes other instances of like kind where there is a *previously established* requirement

16  or agreement to pay for *specific* medical expenses Medicare conditionally paid for.

17       Plaintiff's attempt to demonstrate liability through discovery lacks sufficient

18  commonality with either a judgment or settlement. Plaintiff alleges a novel theory of

19  liability, however, she cannot substantiate it until she obtains the documents she

20  believes will show the acts and omissions giving rise to Defendant's duty to reimburse

21  Medicare. But Plaintiff has not alleged anything suggesting Defendant has a primary

22  responsibility to pay—whether in contract, quasi-contract, or tort—for expenses

23  because she has supplied no dates, no procedures, and no names of beneficiaries. To

24  state a claim under the MSP, Plaintiff must provide more than speculative allegations

25  that she can substantiate once she obtains Defendant's files.

26  //

27       Plaintiff argues that the MSP requires only a demonstrated responsibility to pay,

28  not "tort liability." (Pl.'s Opp. at 16.) Nothing in the Court's ruling requires an MSP

1   claimant to demonstrate responsibility to pay under any particular theory of liability.

2   Rather, the MSP requires that the evidence demonstrating responsibility to pay exist

3   *before* a claimant files an MSP action, and be *specific and identifiable*, because those are

4   the common, limiting features of the means Congress enumerated.

5          Furthermore, allowing the issue of liability to be litigated in federal court would

6   drastically expand federal court jurisdiction, by allowing Plaintiff to begin a fishing

7   expedition to find the documents she alleges must exist. Cf. Glover v. Liggett Group,

8   Inc., 459 F.3d 1304, 1309 (11th Cir. 2006) (finding that tort liability must be

9   demonstrated before an MSP private cause of action for failure to reimburse Medicare

10  can proceed). The Court declines to interpret three generic words in a complex

11  statutory scheme—"by other means"—to authorize such an expansion of federal

12  jurisdiction. Instead, the Court limits its interpretation to "demonstrated" means. At

13  this stage of the litigation, an MSP cause of action requires more than a strong "hunch"

14  that the defendant has files that might demonstrate its responsibility to pay. Because

15  Plaintiff failed to state a cause of action, the Court must dismiss the complaint.

16

17  **IV.   CONCLUSION**

18         The Court hereby **DISMISSES THE COMPLAINT WITH PREJUDICE**

19  because Plaintiff lacks standing to assert the claim, or in the alternative, because she

20  fails to state a claim upon which relief can be granted.

21

22         **IT IS SO ORDERED.**

23

24  DATED: November 7, 2006

25

26                           Hon. Thomas J. Whelan
                           United States District Judge

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

06cv1569

AO 450 Judgment in a Civil Case

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

Erin Brockovich

v.                                          **JUDGMENT IN A CIVIL CASE**

Scripps Health, Does

**CASE NUMBER:**    06cv1569-W (NLS)

☐  **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☑  **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

that the defendant's motion to dismiss is granted with prejudice as the plaintiff lacks the standing to assert a claim, or in the alternative, fails to state a claim on which relief can be granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| November 9, 2006 | W. Samuel Hamrick, Jr. |
|---|---|
| Date | Clerk |

/s/                                              M. Mamer

(By) Deputy Clerk

ENTERED ON November 9, 2006

06cv1569-W (NLS)

**PROOF OF SERVICE BY MAIL**

I am a citizen of the United States and employed in Fresno County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is McCormick, Barstow, Sheppard, Wayte & Carruth LLP, 5 River Park Place East, Fresno, California 93720-1501. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On November 21, 2006, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

in a sealed envelope, postage fully paid, addressed as follows:

> Timothy C. McHugh
> James L. Wilkes
> James M. Morgan
> Wilkes & McHugh
> 500 Silver Spur Rd., Ste. 200
> Rancho Palos Verdes, CA 90275

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 21, 2006, at Fresno, California.

/s/ Peggy Maffei
Peggy Maffei

15286/00000-1034125.v1