1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ERIN BROCKOVICH, on behalf
      of the United States of America,                    CASE NO. CV-F-06-1609 LJO DLB
12
                              Plaintiff,
13          vs.
                                                     **ORDER   GRANTING   DEFENDANT'S**
14                                                   **MOTION TO DISMISS**
      COMMUNITY MEDICAL CENTERS,
15   INC, et al.

16                            Defendants.
      _____/
17

18                                    **INTRODUCTION**

19          Plaintiff Erin Brockovich ("Plaintiff") is a California resident suing Defendant Fresno

20   Community Hospital and Medical Center, Inc., ("Defendant"), a nonprofit corporation and  Does 1

21   through 250 "on behalf of the United States" in an attempt to recoup conditional Medicare Payments

22   under the Medicare Secondary Payer Act ("MSP"), 42 U.S.C. §1395(b).  Defendant filed a Notice of

23   Removal pursuant to 28 U.S.C. 1441(b) on November 09, 2006.  Thereafter, Defendant filed a Motion

24   to Dismiss this action pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).  Defendant claims that

25   Plaintiff lacks standing to assert this claim, Plaintiff failed to state a claim for which relief may be

26   granted, and Plaintiff's claims are too attenuated and uncertain to adjudicate the lawsuit.  This Court

27   finds that Plaintiff lacks standing to assert this claim.  Therefore, Defendant's Motion to Dismiss is

28   GRANTED.

                                              1

**BACKGROUND**

1

2        Medicare is a government program that provides health insurance benefits for persons above 65

3    years of age, persons who are disabled, and persons with end-stage renal disease.  42 U.S.C. §1395y ©

4    (2006).  In order to "curb skyrocketing health costs and preserve the fiscal integrity of the Medicare

5    system," Congress enacted the MSP.  *Zinman v. Shalala*, 67 F.3d 841, 845 (9th Cir. 1995).  Under the

6    MSP, certain private insurers are considered "primary payers" while Medicare is a "secondary payer,"

7    obligated to pay only for medical services not covered by a beneficiary's private insurance plan. *Id.*  The

8    MSP "makes Medicare the secondary payer for medical services provided to Medicare beneficiaries

9    whenever payment is available from another primary payer." *Cochran v. United States Health Care Fin.*

10   *Admin*., 291 F.3d 775, 777 (11th Cir.  2002). "[P]rivate plans are therefore considered 'primary' under

11   the MSP and Medicare acts as the 'secondary' payer responsible only for paying amounts not covered

12   by the primary plan." *Blue Cross & Blue Shield of Texas v. Shalala*, 995 F.2d 70, 73 (5th Cir. 1993).

13        In the event that the primary payer  "has not made or cannot reasonably be expected to make

14   payment with respect to such [medical services] promptly," Medicare will issue "conditional payments"

15   with the expectation that it will be reimbursed after determining that the primary payer was liable for

16   the cost. 42 U.S.C. §1395y(b)(2)(B).  If a primary payer fails to pay or reimburse Medicare, the MSP

17   provides two causes of action.  Originally, only the government had the right to bring an action for

18   double damages against a primary plan. 42 U.S.C. §1395y(b)(2)(B)(iii ). According to the statute, "the

19   United States may bring an action against any or all entities that are or were required or responsible to

20   make payment...under a primary plan." *Id.*   In 1986, Congress added a private cause of action to the

21   MSP.  Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, Section 9319, 100 Stat. 1874

22   (1986). That language reads: "There is established a private cause of action for damages (which shall

23   be in an amount double the amount otherwise provided) in the case of a primary plan which fails to

24   provide for primary payment in accordance with paragraphs (1) and (2)(A)."   43 U.S.C.

25   §1395y(b)(3)(A).

26        Plaintiff brings the instant lawsuit, "on behalf of the United States," alleging that Defendant

27   "caused harm to Medicare recipients who were patients in Community Medical's hospitals, thereby

28   triggering legal obligations on the part of Community Medical...to pay for any consequential medical

2

1  service, treatment, or medication." Complaint, ¶ 6. Plaintiff alleges that Defendant "breached [its] duties
2  to Medicare by not paying for the care that injured Medicare recipients received as a result of
3  Community Medical's conduct and further by not reimbursing Medicare after Medicare provided
4  conditional payment for the care that such medicare recipients received as a result of Community
5  Medical's conduct." *Id.*, ¶ 8.

6
7  **DISCUSSION**
8  **A. Standards of Review**
9       This Court shall dismiss a complaint in the event it lacks "jurisdiction over the subject matter."
10  Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction affects the court's power to hear a case and
11  parties cannot waive it. *Csibi v. Fustos*, 670 F.2d 134, 136 n.3 (9th Cir. 1982). Because Article III
12  standing implicates the jurisdictional power of the court to decide a case, this Court must address
13  Constitutional standing issues before proceeding to the merits. *Friery v. Los Angeles Unified School*
14  *Dist., 448 F.3d 1146, 1148* (9th Cir. 2006). In reviewing a factual challenge to subject matter
15  jurisdiction, "the court need not presume the truthfulness of the allegations." *White v. Lee*, 227 F.3d
16  1214, 1241 (9th Cir. 2000).

17       In considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil
18  Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, construe
19  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the
20  pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969); *Hospital*
21  *Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). Under the basic rule, a motion to dismiss
22  for failure to state a claim should not be granted unless "it appears beyond doubt that plaintiff can prove
23  no set of facts in support of the claim that would entitle him to relief." *See Hishon v. King & Spalding*,
24  467 U.S. 69, 73 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Palmer v.*
25  *Roosevelt Lake Log Owners Ass'n.*, 651 F.2d 1289, 1294 (9th Cir. 1981).

26  **B. No Constitutional Standing**
27       Defendants allege that Plaintiff lacks constitutional standing to bring this action, because she has
28  not suffered any personal harm resulting from their conduct. Article III, section 2 of the U.S.

1    Constitution limits federal court jurisdiction to the resolution of "cases" and "controversies."  Perhaps

2    "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the

3    constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky.*

4    *Welfare Rights Org.*, 426 U.S.26, 37 (1976).   Article III standing requirements "are not mere pleading

5    requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504

6    U.S. 555, 560 (1992).  These requirements, thus, "determine the power of the court to entertain the suit."

7    *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "[T]he standing question is whether the plaintiff has 'alleged

8    such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court

9    jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498-99 (citing

10    *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

11          In order to have standing, a plaintiff must satisfy three "irreducible constitutional minimum"

12    requirements.

13          First, the plaintiff must have suffered an "injury in fact"–an inaction of a legally
          protected interest which is (a) concrete and particularized, and (b) actual and imminent,
14          not 'conjectural' or hypothetical." Second, there must be a causal connection between
          the injury and the conduct complained of–the injury has to be "fairly...trace[able] to the
15          challenged action of the defendant, and not...the result [of] the independent action of
          some third party not before the court." Third, it must be "likely," as opposed to merely
16          "speculative," that the injury will be "redressed by a favorable decision."

17    *Lujan*, 504 U.S. at 560-61.

18          Plaintiff does not plead that she is a Medicare recipient, nor does she claim that she was an

19    insured person who was denied coverage by a "primary" insurer, as that term is used in the MSP statute.

20    Plaintiff has not asserted that she is over 65 years of age, disabled, or suffering from end-stage renal

21    disease.  Plaintiff does not allege that she was injured by Defendant's conduct, that she ever received

22    treatment at Defendant's medical center, or even that she is a Medicare beneficiary or Medicare eligible.

23    In fact, Plaintiff agrees with Defendant that she has suffered no personal injury.[1]  Without any allegations

24    of an injury to herself, Plaintiff lacks personal standing under Article III.

25

26    _____

27          [1]Plaintiff argues that "[t]he very nature of a *qui tam* or representational statute demonstrates that personal injury is
    not an essential element to a Plaintiff's qui claim.." Plaintiff's Opposition to Defendant's Motion to Dismiss, p. 13.  Plaintiff
28    also claims that the United States is the only injured party under the MSP. *Id* at 9.

**C.  MSP is Not a Qui Tam Statute**

A *qui tam* action is "an action under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 997 n.1 (9th Cir. 2002).   In other words, a *qui tam* action allows a private person to sue on behalf of the government and the government is understood to partially assigns its rights to the *qui tam* to such private person. See *Vt. Agency of Natural Res. v. United States ex rel Stevens*, 529 U.S. 765, 773 (2000).   "There is no common law right to maintain a *qui tam* action; authority must always be found in legislation." *Conn. Action Now, Inc. v. Roberts Plating Co., Inc.*, 457 F.2d 81, 84 (2nd Cir. 1972); *United States ex rel Burnette v. Driving Hawk* , 587 F.2d 23, 24-25 (8th Cir. 1978). "The right to proceed *qui tam*...arises only by affirmative statutory authorization.  In the absence of some unambiguous authorization, [a purposed *qui tam* relator] may not so proceed." *United States at rel. Mattson v. Nw. Paper Co.*, 327 F. Supp. 87, 93 (D. Minn. 1971).

Plaintiff argues that although she has suffered no injury herself, she should be allowed to proceed on behalf of the United States because the MSP is a *qui tam* statute which does not require injury to the Plaintiff.  Plaintiff contends that through the creation of the private cause of action, Congress intended that anyone who is aware of Medicare overpayments may assist the government in recovering monies owed to the Medicare program under MSP and may sue to recover.   For the following reasons, the Court finds that the MSP is not a *qui tam* statute.

First, the MSP does not expressly authorize a private person to sue on behalf on the government.  As discussed above, it is well-settled that authority for a *qui tam* action must always be found in legislation.  See, *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 84 (2d. Cir. 1972); *United States ex rel. St . Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co.,*, 451 F.3d 44, 53 (2nd Cir. 2006); *United States at rel. Mattson* v. Nw. Paper Co., 327 F. Supp. 87, 93 (D. Minn. 1971); *Marra v. Burgdorf Realtors, Inc.*, 726 F. Supp. 1000, 1013 (E.D. Pa. 1989).   "Where a dispute is otherwise justiciable, the question of whether the litigant is the proper party to request an adjudication of the particular issue is one within the power of Congress to determine." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972). In the instant case, Congress has declined to grant express authority for a private party to bring an action on behalf of the United States under the MSP.  An example of such language

1  can be found in the Federal Claims Act, which provides that a "person may bring a civil action...*for the*

2  *person and for the United States Government*." 31 U.S.C. 3730(b) (emphasis added).  In this case, no

3  such express language appears.  Without such express Congressional authorization, Plaintiff may not

4  sue on behalf of the government.

5       Further, the plain language of the statute allows the United States and a private party separately

6  to bring an action for recovery of damages under the MSP. 42 U.S.C. §1395y(b)(2)(B)(iii ), 42 U.S.C.

7  §1395y (b)(3)(A).   "When the words of a statute are unambiguous, then, this first canon is also the last:

8  judicial inquiry must end." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  From the plain

9  language of the statute and the absence of any express language by Congress, it would be error to imply

10  a representative right of action.

11       Second, as other courts have noted,[2] the legislative history of the 1986 amendment is evidence

12  that Congress did not intend for the MSP to be a *qui tam* statute.  Congress added the private cause of

13  action to the MSP during the same month and year that Congress amended the False Claims Act, which

14  provides very clear *qui tam* language.  *Compare* Omnibus Budget Reconciliation Act of 1986, Pub. L.

15  No. 99-509, SECTION 9319, 100 Stat. 1874 (1986) *with* False Claims Amendments Act of 1986, Pub.

16  L. No. 99-562, 100 Stat. 3153 (1986).  Final Congressional approval to legislation added th MSP private

17  cause of action came ten days after final approval of the Federal Claims Act amendments.  See 1986

18  U.S.C.C.A.N. 3868, 5266.  Congress' contemporaneous enactment of an express *qui tam* action in the

19  FCA is compelling proof that it did not intend for the MSP's private right of action, which lacks any

20  similar express authorization, to provide Plaintiff standing to sue on behalf of the Government.  See

21  *Touche Ross & Co v. Redington*, 442 U.S. 560, 571-72 (1979) (including private remedy in one statute,

22  but not in second, contemporaneously adopted statute, demonstrates that Congress did not intend to

23

---

24  [2]In support of the Motion to Dismiss, Defendant attached three recent opinions which all dismiss Plaintiff for lack of standing for claims under the MSP.  This Court has independently reviewed these orders and finds them well-reasoned and persuasive. See *Brockovich v. HCA, Inc, et al,*, CV 06-4501 DOC (C.D. Ca.  October 24, 2006); *Brockovich v. Sharp*

25  *Healthcare*, 06-CV-1628 W,(S.D. Ca. November 7, 2006); *Brockovich v. Scripps Health*, 06-CV-1569  W (S.D. Ca. November 7, 2006).  The Court also notes that at least fifteen other cases filed by Plaintiff and another party have been

26  dismissed in district courts in California, Florida, Tennessee, Pennsylvania, and Arkansas. See *St alley v. Community Health Sys.*, 2007 U.S. Dist. LEXIS 14849, n.1 (M.D. Fla. March 2, 2007).  Plaintiff has filed more than 30 cases with similar claims

27  in California alone and 49 nearly identical cases throughout the country. *Stalley v. Health*, 2007 U.S. Dist. LEXIS 14589 (E.D.  Tenn. February 28, 2007).   At this time, the majority have been dismissed.  No court has found that Plaintiff has

28  standing. See Daniel Yi, "Judge Rejects Brockovich's Role as Plaintiff," L.A. Times (November 10, 2006).

1    create that remedy in second statute).

2          Third, the MSP does not have certain characteristics shared among *qui tam* statutes. For instance,

3    there is no automatic allocation of the recovery to the United States under the private cause of action of

4    the MSP.  A *qui tam* action is "an action under a statute that allows a private person to sue for a penalty,

5    *part of which the government or some specified public institution will receive*."  *United States v. Kitsap*

6    *Physicians Serv.*, 314 F.3d 995, 997 n.1 (9th Cir. 2002) (emphasis added).   Under 43 U.S.C.

7    §1395y(b)(3)(A), the private party who brings the action is eligible to receive double of the damages

8    owed to Medicare, but the government would receive nothing.  To receive any portion of a plaintiff's

9    recovery under a private cause of action, the United States must bring a subsequent suit against plaintiff.

10   That would contradict the purpose of a qui tam statute.[3]  Furthermore, *qui tam* statutes generally specify

11   a relator's bounty calculated as a portion or percentage of the U.S. recovery.[4]  The MSP does not specific

12   any portion or percentage of the award for the plaintiff.  Instead, it would provide the entire award to

13   Plaintiff.  That is uncharacteristic of a *qui tam* statute.

14         Finally, *qui tam* statutes generally have important procedural safeguards, since they involve "the

15   delegation of some sovereign attributes" from the government to the private citizen."  *United States ex*

16   *rel St. Regis Mohawk Tribe*, 451 F.3d at 53.  Perhaps the most important of these safeguards is that the

17   United States remains the real party in interest.  *See United States v. Schimmels*, 127 F.3d 875, 882 (9th

18   Cir. 1997) ("[I]n qui tam action, the government is the real party in interest.").  As a real party in interest

19   in *qui tam* suits such as the Federal Claims Act, the United States "must be allowed to participate

20   in...[the] action filed by private individuals, and, if the government so desires, to take over the

21   prosecution of such actions."  *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 394 (2d Cir. 2001).

22   "Furthermore, the government can have private FCA suits dismissed even over the objection of the

23   _____

24         [3]*Qui tam* is short for the Latin phrase, "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*," which
     translates to he "who pursues this action on our Lord the King's behalf as well as his own."  *Vt. Agency of Natural Res. v.*
25   *United States ex rel Stevens*, 529 U.S. 765, 768 n.1 (2000).

26         [4]Even Plaintiff's own cited examples provide the informer or relator with a portion of recovery.  For example,  18
     U.S.C. §962 grants the informer one half of forfeiture the informant helped secure. 46 App. U.S.C. §723 states that "all
27   forfeitures incurred by virtue of this section shall accrue, one moiety to the informer and the other to the United States." 35
     U.S.C. §292 provides that "any person may sue for the penalty, in which event one-half shall go to the person suing and the
28   other to the use of the United States."

1  citizen who filed the action, as long as notice and an opportunity for a hearing are provided to the

2  individual citizen," unlike in MSP actions. *Id.* These procedural safeguards are necessary, because the

3  Executive Branch must retain control over a qui tam relator to satisfy the Take Care Clause of the United

4  States Constitution, Article II, Section 3. United States ex rel Taxpayers Against Fraud v. Gen. Elec.

5  Co., 41 F.2d 1032, 1041 (6th Cir. 1994). "Unlike typical *qui tam* statutes, the MSP does not require the

6  plaintiff to follow procedural safeguards found in modern *qui tam* statutes to ensure the government

7  remains fully apprised of the litigation, has the opportunity to participate, and retains the power to make

8  key decisions over the relator's objections." *Brockovich v. Sharp Healthcare*, 06-CV-1628, p.7 (S.D.

9  Ca. November 7, 2006).   Without the United States as the real party in interest, and other procedural

10 safeguards, the MSP does not share common characteristics of *qui tam* statutes.   Thus, this Court finds

11 it is not a qui tam statute.

12                                                    **CONCLUSION**

13         After careful review of the statutory language and Congressional history of the MSP, as well as

14 considering typical attributes of *qui tam* statutes, this Court finds that the MSP is not a *qui tam* statute.

15 Because the government has not partially assigned its right to the private claim in the statute and Plaintiff

16 has not established an injury-in-fact to herself, Plaintiff has no standing to bring this action on behalf

17 of the United States.  Because Plaintiff lacks constitutional standing to bring suit under the MSP, the

18 Court declines to address Defendant's additional arguments.

19         For the reasons set forth above, the Court hereby GRANTS Defendant's Motion to Dismiss.

20 Because these deficiencies could not possibly be cured by amendment, see *Chang v. Chen*, 80 F.3d 1293,

21 1296 (9th Cir. 1996), the Court DISMISSES WITH PREJUDICE Plaintiff's complaint.  The clerk is

22 directed to close this action.

23         IT IS SO ORDERED.

24 **Dated:   March 6, 2007**                    _____/s/ Lawrence J. O'Neill_____
   66h44d                                        UNITED STATES DISTRICT JUDGE

25

26

27

28

                                                        8